# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHT CIRCUIT

_____

### NO. 12-1730

_____

**June Brown,**

**Plaintiff-Appellant**

**vs.**

**CITY OF JACKSONVILLE; PAUL MUSHRUSH;
CHERYL ERKEL**

**Defendants-Appellees**

**On Appeal from the United States District Court
For the Eastern District of Arkansas, Western Division
Case No. 4:10-CV-1637 JMM
The Honorable James M. Moody, District Judge**

_____

### BRIEF OF APPELLANT

_____

Lucien Gillham
8th Circuit Bar No. 99199
Sutter & Gillham, P.L.L.C.
Post Office Box 2012
Benton, Arkansas 72018

Appellate Case: 12-1730    Page: 1    Date Filed: 05/22/2012 Entry ID: 3914089

# SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

June Brown appeals from an Order granting Appellees motion for summary judgment on her claims for discharge based on retaliation for filing of an EEOC charge, her age, use of FMLA leave, and disability, the Americans with Disabilities Act, the Arkansas Civil Rights Act (Ark. Code Ann. 16-123-101, *et seq*.), the Family Medical Leave Act, the Age Discrimination in Employment Act, 29 U.S.C. § 623 *et seq*. (2006). The Court ruled that Brown failed to establish retaliatory or discriminatory intent, and that she failed to establish that she had a disability within the meaning of the ADA.

Brown should have survived summary judgment based under either a direct evidence or a *McDonnell Douglas* analysis. She also provided sufficient evidence to show that she was regarded as disabled. In any event, the Defendants had not even raised the issue of whether or not Brown was disabled, and the Court inappropriately used an actual disability standard, in a regarded as case.

The Appellant requests oral arguments of fifteen minutes for each party.

Appellate Case: 12-1730    Page: 2    Date Filed: 05/22/2012 Entry ID: 3914089

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND ORAL ARGUMENT REQUEST ................... ii

TABLE OF CONTENTS ......................................................... iii

TABLE OF AUTHORITIES ....................................................... v

JURISDICTIONAL STATEMENT .................................... viii

STATEMENT OF THE ISSUES .............................................. ix

STATEMENT OF THE CASE ..................................................... 1

STATEMENT OF THE FACTS .................................................. 2

SUMMARY OF THE ARGUMENT ...................................... 16

ARGUMENT ....................................................................... 17

**I.    The District Court incorrectly granted summary judgment on arguments that were not raised by Defendants and which are not supported by the applicable facts or law……………………………20**

> **a. The Court erred in dismissing the disability claim on grounds that Brown did not establish protected status because: (1) Defendants did not move for summary judgment on that basis; (2) the Court found Brown had not pointed to specifics in the record establishing disability, when in fact she had; (3) the Court analyzed the claim as an actual disability discrimination claim, when it has been brought as a perceived as disabled claim……………….21**

> **b. The Court erred in applying the same decision-maker inference since the issue was not raised by Defendant, the facts and law do not support that inference, and it violates the summary judgment standard……………………………………………23**

Appellate Case: 12-1730    Page: 3    Date Filed: 05/22/2012 Entry ID: 3914089

**II.** Summary judgment should not have been granted on the claims of retaliation for complaining of discrimination, because: (a) Brown had direct evidence in the form of comments from Cheryl Erkel, combined with evidence of timing, different treatment, closer supervision, and increased discipline following protected activities…..25

**III.** Summary judgment on the disability, age, and FMLA retaliation claims was not appropriate because Brown provided direct evidence, established qualification, and could also survive summary judgment on a *McDonnell Douglas* analysis………………………35

    **A.** Plaintiff provided direct evidence of discriminatory intent as to age and disability based on the comments of Mushrush…..35

    **B.** Brown made out a prima facie case under *McDonnell Douglas* as to qualification by virtue of having done the job, successfully, for years – the only bases for disputing qualification were also Defendants' legitimate, non-discriminatory reason, and she is not required to disprove that reason in the prima facie case…..37

    **C.** Brown could establish the intent element of the prima facie case and pretext on her age, disability, and FMLA retaliation claims……………………………………………38

CONCLUSION .......................................................................................42

CERTIFICATE OF SERVICE AND COMPLIANCE ...........................................43

ADDENDUM ..........................................................................................44

  1. Order of February 24, 2012 ...............................................(Apx. 459) Add 46

  2.  Judgment of February 24, 2012 .......................................(Apx. 473) Add 62

  3.  Plaintiff's Notice of Appeal .............................................(Apx. 476) Add 63

Appellate Case: 12-1730     Page: 4     Date Filed: 05/22/2012 Entry ID: 3914089

# TABLE OF AUTHORITIES

Cases

Abraham v. Raso, 183 F.3d 279, 287 (3rd Cir. 1999) ...............................18

Bagget v. Program Resources, Inc., 806 F.2d 178 (8th Cir. 1986) ............................40

Balicao v. University of Minn., 737 F.2d 747 (8th Cir. 19_) (retaliation). ...............20

Balicao v. University of Minn., 737 F.2d 747 (8th Cir. 1984) ..............................29

Bazan v. Hidalgo County, 246 F.3d 481 (5th Cir. 2001)..............................18

Bobo v. United Parcel Service, 665 F.3d 741, 756-57 (6th Cir. 2012) ....................25

Brine v. University of Iowa, 71 F.E.P. 490 (8th Cir. 1996)....................................41

Burns v. AAF-McQuay, Inc., 96 F.3d 154, 179 (4th Cir. 1996) ................ 19, 31, 32

Coleman v. Donahoe, 667 F.3d 835, 862-63 (7th Cir. 2012) ....................................25

Craik v. Minnesota St. Univ. Bd., 731 F.2d 465 (8th Cir. 1984) ............................36

Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994); Johnson v. Minn. Hist. Soc'y, 931 F.2d 1239, 1244 (8th Cir. 1991)...........................................19

Davenport v. Riverviews Gardens Sch. Dist., 30 F.3d 940, 944 (8th Cir. 1994))....38

Davis v Fleming Cos., Inc., 55 F.3d 1369, 1370 (8th Cir. 1995) ..............................33

Denesha v. Farmers Ins. Exch., 161 F.3d 491, 500 (8th Cir. 1998) .........................39

Desert Palace, Inc. v. Costa ..........................................................................25

Dey v. Colt Construction & Development Co., 28 F.3d 1446 (7th Cir. 1994). 19, 31, 32

Duckworth v. Ford, 83 F.3d 999 (8th Cir. 1996). In Phillips v. ANR Freight Sys., 945 F.2d 1054 (8th Cir. 1991) ...........................................................40

Estes v. Dick Smith Ford Inc., 856 F.2d 1097, 1103 (8th Cir.1988)............... 36, 40

Gilooly v. Missouri Dep't of Health and Sr. Svcs., 421 F.3d 734, 740-41 (8th Cir. 2005) ............................................................................................27

Gooden v. Howard County, Md., 954 F.2d 960, 971 (4th Cir. 1992) .....................18

Graves v. Arkansas Dep't of Fin. and Admin., 229 F.3d 721 (8th Cir. 2000) .........32

Greene, 98 F.3d at 561 ...............................................................................39

Greenwood v. Ross, 778 F.2d 448 (8th Cir. 1985).............................................29

Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004).........................20

Griffith, 387 F.3d at 736 ...............................................................................25

Hardin v. Hussman Corp., 45 F.3d 262, 263, 266 (8th Cir. 1995) ..........................36

Hartley v. Dillards, Inc., 310 F.3d 1053 (8th Cir. 2002) ......................................36

Hawkins v. Hennepin Tech. Ctr., 900 F.2d 153 (8th Cir. 1990), cert. den'd 111 S.Ct. 150 (1990)........................................................................................40

Hawkins v. Hennepin Tech. Ctr., 900 F.2d 153, 155 (8th Cir. 1990), cert. den'd 111 S.Ct. 150 (1990)........................................................................................36

Herr v. Airborne Freight Corp., 130 F.3d 359, 362-63 (8th Cir. 1997)....................24

Appellate Case: 12-1730     Page: 5     Date Filed: 05/22/2012 Entry ID: 3914089

Jaros v. LodgeNet Entertainment Corp., 294 F.3d 960 (8th Cir. 2002) ...................41
Jezwinski v. Jacksonville, AR, City of, Case No. 4:08-cv-4211 JMM ...................15
Kellin v. ACF Industries, 629 F.2d 532 (8th Cir. 1980).......................................29
Kells v. Sinclair Buick-GMC Truck, 210 F.3d 827, 835 (8th Cir. 2000).........25
Keys v. Lutheran Family & Children's Svcs, 668 F.2d 356 (8th Cir. 1981)............31
Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568 (8th Cir. 1995)...........................39
Landon v. Northwest Airlines, Inc., 72 F.3d 620, 624-25 (8th Cir. 1995)........ 31, 32
Lyoch v. Anheuser-Busch Cos., 139 F.3d 612, 615 (8th Cir. 1998) .......................32
Madel v. FCI Marketing, Inc., 116 F.3d 1247 (8th Cir. 1997) ................................24
McDonnell Douglas ........................................................................................ passim
O'Bryan v. KTIV Television, 64 F.3d 1188, 1193 (8th Cir. 1995)..........................24
Putman v. Unity Health System, 348 F.3d 732, 736 (8th Cir. 2003) (discrimination) ....................................................................................................................20
Pye v. Nu Aire, Inc., 641 F.3d 1011 (8th Cir. 2011) ..............................................26
Quinn v. Green Tree Credit Corp., 159 F.3d 759, 770 (2d Cir. 1998) ...................33
Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000)..................18
Riordan v. Kempiners, 831 F.2d 690, 697-698 (7th Cir.1987) ..............................36
Russell v. City of Kansas City ...............................................................................25
Russell v. City of Kansas City, 414 F.3d 863, 866-67 (8th Cir. 2005) ...................20
School Board of Nassau County, Fla., v. Arline, 480 U.S 273 (1987)....................23
Shaver v. Independent Stave Co., 350 F.3d 716 (8th Cir. 2003)............................23
Stacks v. Southwestern Bell Yellow Pages, Inc., 27 F.3d 1316 (8th Cir. 1994)......39
Staub v. Proctor Hosp., 131 S.Ct. 1186 (2011) ....................................................28
Thomas v. First Nat'l Bank of Wynne, 111 F.3d 64, 66 (8th Cir. 1997) ................25
Thurman v. Yellow Freight Sys., Inc., 90 F.3d 1160 (6th Cir. ) ..............................19
United Airlines v. Evans, 431 U.S. 553, 558 (1977)..............................................39
Wexler v. White's Fine Furniture, 317 F.3d 564, 573-74 (6th Cir. 2003) ..............25
White v. Honeywell, Inc., 141 F.3d 1270 (8th Cir. 1998).......................................40
Widoe v. District No. 111 Otoe County School, 147 F.3d 726, 730 (8th Cir. 1998) ....................................................................................................................31
Willnerd v. First National Nebraska, Inc., 558 F.3d 770 (8th Cir. 2009)...............32
Wilmington v. J.I. Case Co., 793 F.2d 909 (8th Cir. 1986).....................................32
Womack v. Munson, 619 F.2d 1292 (8th Cir. 1980)................................................26
Young v. Warner-Jenkinson Co., 152 F.3d 1018 (8th Cir. 1998) ...........................31
Young v. Warner-Jenkinson Co., 152 F.3d 1018, 1024 (8th Cir. 1998) .................33
Young, at 1023-24.................................................................................................31

Statutes
Ark. Code Ann. § 16-123-101 et seq. ................................................................. viii
Ark. Code Ann. 16-123-101, et seq. ...................................................................... ii

Appellate Case: 12-1730    Page: 6    Date Filed: 05/22/2012 Entry ID: 3914089

Regulations

28 U.S.C. § 1331 ........................................................................................... viii
29 U.S.C. § 623 et seq. (2006) .......................................................................... ii
29 U.S.C. § 623, et seq ................................................................................. viii

Constitutional Provisions

Age Discrimination in Employment Act ........................................................ ii, viii
Arkansas Civil Rights Act ............................................................................ ii, viii
Family Medical Leave Act ............................................................................ ii, viii

Rules

Fed. R. App. P. 4(a) ....................................................................................... viii

Other Authorities

Wright & Miller, Civil 3d, Vol. 10b, Sec. 2739 (citing Adickes v. S.H. Kress &
    Co., 90 S.Ct. 1598 (1970) and Fed. R. Civ. Proc. 56, Advisory Committee Notes,
    1963) ...................................................................................................... 19

Appellate Case: 12-1730    Page: 7    Date Filed: 05/22/2012 Entry ID: 3914089

# JURISDICTIONAL STATEMENT

This action was brought under the Americans with Disabilities Act and Arkansas Civil Rights Act for discrimination and retaliation for filing a charge of discrimination, the Family Medical Leave Act for retaliation, the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101 et seq., for disability and the Age Discrimination in Employment Act, codified at 29 U.S.C. § 623, et seq, for age discrimination and retaliation for filing a charge. There was federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Brown's state law claims, which arose out of the same common nucleus of operative fact. The District Court granted summary judgment on February 24, 2012, and thus dismissed the case. Apx. 459-75. Add 46-62. The District Court's Order granting the Motion for Summary Judgment dismissed the claims with prejudice and is a final and appealable order pursuant to Fed. R. App. P. 4(a). Notice of appeal was timely filed on March 24, 2012. Apx. 476.

Appellate Case: 12-1730    Page: 8    Date Filed: 05/22/2012 Entry ID: 3914089

## <u>STATEMENT OF THE ISSUES</u>

**I.** **Did the District Court err in finding that Brown could not establish retaliatory intent when one of the decision-makers made comments indicating that her complaints of discrimination were insubordinate and the investigation that led to Brown's termination arose out of her complaints of discrimination.**

*Womack v. Munson*, 619 F.2d 1292 (8th Cir. 1980)
*Gilooly v. Missouri Dep't of Health and Sr. Svcs.*, 421 F.3d 734 (8th Cir. 2005)
*Kellin v. ACF Industries*, 629 F.2d 532 (8th Cir. 1980)
*Russell v. City of Kansas City*, 414 F.3d 863 (8th Cir. 2005)

**II.** **Did the District Court err in finding that Brown could not establish intent on her age and disability discrimination claims when one of the decision-makers had made discriminatory comments related to her age and disability.**

*Hardin v. Hussman Corp.*, 45 F.3d 262 (8th Cir. 1995)
*Craik v. Minnesota St. Univ. Bd.*, 731 F.2d 465 (8th Cir. 1984)
*Estes v. Dick Smith Ford Inc.*, 856 F.2d 1097 (8th Cir.1988)
*Hawkins v. Hennepin Tech. Ctr.*, 900 F.2d 153 (8th Cir. 1990), *cert. den'd* 111 S.Ct. 150 (1990)

**III.** **Was the same decision-maker inference appropriate, given that there was no evidence the decision-makers were the same, the direct evidence, the twelve year time lapse, and intervening changes.**

*O'Bryan v. KTIV Television*, 64 F.3d 1188, 1193 (8th Cir. 1995)
*Herr v. Airborne Freight Corp.*, 130 F.3d 359, 362-63 (8th Cir. 1997)
*Madel v. FCI Marketing, Inc.*, 116 F.3d 1247 (8th Cir. 1997)
*Kells v. Sinclair Buick-GMC Truck, Inc.*, 210 F.3d 827, 835 (8th Cir. 2000).

Appellate Case: 12-1730     Page: 9     Date Filed: 05/22/2012 Entry ID: 3914089

## STATEMENT OF THE CASE

June Brown appeals from an Order granting Appellees motion for summary judgment on her claims from wrongful discharge based on filing a charge of discrimination, her age, disability, and use of FMLA leave.    Brown worked for the City of Jacksonville as Purchasing Manager for 12 years. Paul Mushrush was her supervisor for much of that time, but eventually he promoted Brown's peer, Cheryl Erkel, over Brown, in an unposted, uncontested, uninterviewed promotion. This was after Brown had filed an EEOC charge alleging age and disability discrimination.  She began to be subject to closer supervision and policies that applied to no one else.  For example, though salaried, she was not allowed to work in excess of forty hours a week, though other managers were.  She was then subjected to weekly reports, which no other person was.  She was then written up for being at work after 5, and later because she did not get enough work done. This is obviously unfair, since working in excess of forty hours a week, would alleviate pressure to get sufficient work done.  It turns out that the matters over which she was disciplined were not her fault, and this was known to her supervisors.  She complained of discrimination and filed another charge.  Her supervisor, who had a role in the termination, indicated that she was insubordinate for claiming she was being discriminated and retaliated against.  The Court also considered arguments not raised by Defendants, such as regarded as disabled and

1

the same decision-maker inference giving Brown no chance to argue the issues before depriving her of a jury trial. When it did so, was mistaken in any event, both on the applicable facts and law.

Appellant now seeks a reversal of the Order granting summary judgment on her ADA, ACRA, FMLA, and ADEA claims for her termination

## STATEMENT OF THE FACTS

On November 30, 1998, the City of Jacksonville hired the Plaintiff to work in the Purchasing and Finance Department. In 1999, the Plaintiff was promoted to the position of purchasing manager and had supervisory responsibility over Angela Blacklock. Apx. 354, Resp. 1-6. On June 9, 2009, Brown was fired. Apx. 240, para. 12.

Paul Mushrush was the City Finance Director and was Brown's direct supervisor until December of 2007, when Cheryl Erkel was promoted to be Assistant Director of Finance, and became Brown's direct supervisor. Apx. 354-55, Resp. 1-6. The City of Jacksonville employed more than 50 people within 75 road miles of my worksite at all times during 2006 through 2009. At all times between 2006 and 2009, Brown had worked for the City for more than one year and more than 1250 hours in the preceding year. Apx. 240, para. 2-3.

1. **Disability and Serious Health Condition.**

Appellate Case: 12-1730   Page: 11   Date Filed: 05/22/2012 Entry ID: 3914089

For years, Brown had chronic and progressive hip problems, that caused her to use a cane, walk with a limp, walk twice as slow, drag her leg, and suffer a lot of pain on a constant basis. If she walked, sat too long, stood too long, or laid down too long, it caused the pain to get worse. It caused her to lose a lot of sleep. She would have to sleep in her chair and might get as little as 2 hours of sleep a night on some nights. Putting all her weight on one leg caused her to have problems and pain with her foot and knee on that side. For years, Brown regularly saw three physicians about these conditions: a primary care physician, a pain management physician, and an orthopedist. Her treatment included prescription medications. Then she had surgery in the form of a hip replacement and had to take FMLA leave during August-October 2008. Apx. 240, para. 5.

## 2. Perceived disability, discriminatory conduct begins and initial complaints of discrimination.

During the latter months of October of 2006 and the first three months of 2007, Paul Mushrush, began making discriminatory and derogatory comments to Brown based on age and disability. On several occasions, he referred to her as, "old woman." On one occasion, he said, "Hey old woman, we moving slow," in reference to her hip problem. On another occasion, he referred to hip problem and age by stating that she was "such an old woman, can't even straighten up." He also greeted Brown with, "Hey, Crip." Apx. 240, para. 14.

3

In January of 2007, Brown complained to then-Mayor Tommy Swaim about these types of comments, as well as an incident in which Mushrush had openly berated her in front of other employees who were not then in her chain of command. In response, Mayor Swain said, "you are always emotional" and took no action. Apx. 240, para. 15. A few days after this complaint to the Mayor, Mrs. Brown was asking whether a particular individual's emails could be directed to Mr. Mushrush, as well as to herself. Mushrush responded that if he had to look at the emails, "she could go home and retire." Based on the conduct above, Brown filed an EEOC charge on May 15, 2007, alleging discrimination based on disability, age, and sex. Apx. 241, para. 16; Apx. 355, para. 5-6.

### 3. Retaliatory conduct begins.

Before her May 2007 charge, Brown had not been disciplined. Apx. 240, para. 8. After Brown's May 2007 charge things started getting unpleasant. She was accused of things she had not done, yelled at and treated badly. Then, in November 2007, Mushrush and HR Director Jill Rogers met with Brown and told her she could not work past 5:00 in a job they knew required doing that. This is despite the fact that Brown was a salaried employee, expected to work to complete the job, and did not receive overtime. It is also a rule that was not applied to any other salaried employee, either before or after November 2007; including Mushrush and Erkel, who she had known to work nights and weekends. Brown

indicated that she needed to be able to work in excess of forty hours a week to complete her job. Apx. 235, para. 7-8; Apx. 240, para. 9; Apx., 355-56, para. 7; Ex. C, Mushrush, 48.

Mushrush claims that during the November 2007 meeting he also identified and addressed problems in purchasing.  However, this is not true.  Rather, this was part of a number of meetings with all employees in the finance department concerning how the department could be made more efficient.  Brown was never told before or during that meeting that there any problems with her performance whatsoever.  Apx. 235, Resp. Para. 7-10; Apx. 355-57, para. 7-10.

Then in December 2007, Cheryl Erkel was promoted to be Assistant Director of Finance, and became Brown's direct supervisor.  Apx. 354-55, Resp. 1-6.  Erkel does not have a disability and is more than ten younger than Brown.  The job was not posted or advertised, and Erkel had a habit of sleeping on the job and leaving during the workday to transport family members.  Apx. 241, para. 21.  Ex. C, Mushrush, at 7-8, 10, 51. Erkel told Brown that Mushrush had instructed her to keep a close eye on Brown.  Apx. 241, para. 22.

On January 11, 2008, Mushrush wrote Brown up for being there slightly after 5:00 p.m.  It was the first discipline she had ever received.  Notably, although she was in the building ever so slightly after 5, Mushrush did not giver her the opportunity to explain that she had merely been talking with Kathryn Jezwinski

5

(Deputy City Clerk) and her Assistant Angela Blacklock, but was not working. Apx. 235-36, para. 11; Apx. 357, para. 11. The janitors were also there at the time. Brown felt this conduct was both retaliatory and discriminatory, due to Mushrush's negative tone, the failure to ask her what she was doing, the fact that no one else got written up for being there after 5 (janitors, Blacklock and Jezwinski), and that she is salaried. Id. It is notable that after being restricted in how much work she could do, Brown would later be disciplined for not getting enough work done. Apx. 236, 358 (para. 14); Apx. 241, para. 20. Jezwinski was more than 20 years younger than Brown, and had no health problems. The janitors had not complained of discrimination. *Id.*

Accordingly, Brown filed a grievance on January 13, 2008, alleging unfair, discriminatory, and retaliatory treatment. Apx. 236, para. 12; Apx. 240, para. 6; Apx 357-58, para. 12. The response was to let the discipline stand, and Brown's supervisor, Cheryl Erkel, indicated Brown was disrespectful and insubordinate for making a complaint, although Brown had merely followed city procedure in filing the grievance. Apx. 236, para. 13; Apx. 358, para. 13. Not only that, but Erkel then accused Brown of creating the hostile work environment, which aside from being false, had not ever been brought to Brown's attention or resulted in discipline before. Apx. 236, 358 (Para. 14).

6

Then, in March of 2008, after the restriction on working hours had had sufficient time to impact Brown's production, "Erkel sent an e-mail . . . regarding concerns . . . about apparent delays . . . in processing accounts payable items." Apx. 358-59 (para. 15). Notably though, Erkel had not imposed any particular payable on time requirement on Brown at the time. Furthermore, when Erkel did impose a requirment, it was an 80% requirement, and on 2 of the 3 pay periods in question, Brown had met that goal, so why is she being criticized concerning them? Apx. 236, para. 15-17. It was inevitable that some bills would be late. Ex. C, Mushrush, 38. Furthermore, as to the third week, the delays had resulted from department heads not appropriately submitting paperwork so bills could be paid, but Erkel would hear no explanation. Again, on March 24, 2008, Erkel sent Brown an e-mail regarding "delays." However, in this case 46 of 172 items were not paid timely, not far below the 80% mark, and Erkel's own e-mail reveals that only 12 of those could have been processed sooner. This would mean that Brown was in fact well above the 80% mark, so once again, why is she being criticized? Apx. 236, 359-60, (para. 17-18). Brown had also been told by Erkel to ask for assistance when she needed, and had during this period, but Erkel refused the assistance. Apx. 237, 360 (para. 20). Finally, Erkel was not sending anyone else weekly e-mails about their efficiency, suggesting closer supervision. Apx. 236, 358 (para. 15).

Appellate Case: 12-1730    Page: 16    Date Filed: 05/22/2012 Entry ID: 3914089

Furthermore, it would not be shocking to miss that mark once in a while after having your ability to work reduced. This is especially true given that Brown's Assistant had been off much of that month. Brown had asked Erkel for some help twice, which Erkel refused to give. Apx. 128, 236-37, 360 (para. 19-20).

On May 8, 2008, a right to sue letter was issued, but Brown did not at that time bring suit. Apx. 360-61.

### 4. Use of FMLA leave and file pillage.

The City of Jacksonville has acknowledged that Brown took 449.5 hours (eleven weeks and one day) of FMLA leave from August 9 through October 18, 2008. Apx. 363, para. 32. While Brown was out, Erkel came and reorganized Brown's entire filing system, moving files into different location, a different order, and some into storage. Apx. 238, 364 (para. 35).

### 5. Illegal writeup and complaint about it.

On April 9, 2009, Brown was written up by Erkel for failure in performance of duties in the form of failing to meet deadlines, processing bids, and projects in a timely manner and for failing to maintain accurate records. The write-up was unwarranted for several reasons. First, the failure to maintain accurate records allegation arose from an FOIA request that could not be answered for lack of the documents. Aside from the fact that Ms. Brown's file room had essentially been

8

sacked and pillaged months before by Erkel, the fact is that Brown is not the only person who had access to a file that was literally ten years old. Any number of people could have lost it. Erkel knew this and Brown did not lose the documents. Apx. 238, 364 (para. 35); Apx. 242, para. 31; Ex. C, Mushrush, 53-54, 98-100, 103; Ex. D, Erkel Depo.,31-32.

Second, the bid was late because the public works director had asked her to put the bid in the paper and said he would have the specs the next day, but then did not provide them. Brown informed Erkel of this, but she did not care. *Id.* Finally, it is clearly unfair to claim that a person is not meeting deadlines and processing bids and projects in a timely manner, after you have restricted them to a forty hour week for no reason. Id. Brown had informed Erkel that even though she was generally processing payments on time, the forty hour restriction was a problem for projects such as this. Apx. 237, 360, 362-63 (para. 20, 30). It is clearly unfair to tell a person that if they need help due to the forty hour restriction, they can ask for it, and then deny help when they do ask, which is what happened in this case. Apx. 241-42, para. 30.

On April 9, 2009, Brown filed a grievance stating she felt the counseling was in retaliation for her previous EEOC charge. Apx. 364-65, para. 36. An investigation was conducted by persons not trained in these issues, and on April 27, 2009, they claimed they could find nothing. Apx. 238, 365 (para. 37-38); Ex.

Appellate Case: 12-1730    Page: 18    Date Filed: 05/22/2012 Entry ID: 3914089

C, Mushrush, at 67. On April 17, 2009, Erkel wrote a letter back to Brown, stating that Brown's accusations were "disrespectful to me and my position of authority. Disrespect of one's supervisor is insubordination." Apx. 407.

### 6. Retaliatory Investigation.

On May 21, 2009, Jill Ross (HR) and Cheryl Erkel (Supervisor) conducted an investigation into June Brown, interviewing all persons in the department. Erkel and Mushrush have acknowledged that it was a violation for her to conduct the investigation of Brown. Apx. 241, para. 28; Ex. C, Mushrush; 65, 67-68; Ex. D, Erkel, 32-34. Defendants claimed this was because the investigators of Brown's allegations of retaliation and a hostile work environment in April of 2009 had indicated that people they had talked to had accused Brown of creating a hostile work environment. A review of the investigators report showed they said no such thing, and during the fact finding hearing, they indicated they had said no such thing. Apx. 238-39, 365-66, 368 (para. 39, 45). Erkel has admitted that this investigation would not have occurred but for Brown's April 2009 complaints of discrimination and retaliation. Apx. 241, para. 18. The District Court expressly found that "Further, Defendants stated on the record that Plaintiff would probably not have been fired but for the investigation into her allegations." Order, at 9. Apx. 467, Add 54.

Appellate Case: 12-1730    Page: 19    Date Filed: 05/22/2012 Entry ID: 3914089

Furthermore, Brown had never cursed at anyone, threatened anyone, yelled at anyone, touched anyone acted violently, or made discriminatory comments, and denies any actions causing a hostile work environment (jokes, slurs, stereoptypes). Apx. 239, 367 (para. 44). And this Court need not rely on Brown's word alone, as both Erkel and Mushrush have stated facts in deposition indicating there was not a hostile work environment. Ex. C, Mushrush, at 83-84, 88-91; Ex. D, Erkel Depo., 7, 10-11, 13, 16-19, 24-25.

Accordingly, as she was being subjected to a retaliatory investigation, Brown filed an EEOC charge on May 26, 2009. Apx. 238-39, 365-66 (Apx. 39-41).

Defendants concluded their witch hunt on June 8, 2009, claiming there was a hostile work environment. However, this was false – Brown was not rude, did not yell at anyone, did not curse at anyone, did not touch anyone, did not act violently toward anyone, did not threaten anyone, and uttered no slurs, stereotypes, or jokes. Apx. 239, 367 (para. 43-44).

**7.    Termination.**

On June 9, 2009, Mushrush fired Brown, claiming a "Failure in Performance of Duties" and "Failure in Personal Conduct." Jill Ross and Cheryl Erkel were consulted on this decision. Apx. 238 (Resp. para. 35, 39), 257-59, 265, 285-86, 338, 342. However, the real reason was because of Brown's complaints of

Appellate Case: 12-1730   Page: 20   Date Filed: 05/22/2012 Entry ID: 3914089

discrimination, age, disability, and seeking and taking accommodation in the form of FMLA leave. Apx. 239, 367 (para. 45). Notably, Erkel had accused Brown of insubordination in the past for complaining of discrimination and admitted this investigation would not have occurred if she had not complained of discrimination and retaliation in April of 2009. Apx. 241 (para. 17-18). The suspect nature of the investigation into Brown for a "hostile work environment" is discussed above. See also Apx. 239, 368 (para. 45). As to the failure to perform duties allegation, it is also baseless. It mentions the April 2009 write up as a basis, and that has been demonstrated to have been baseless above.

Particularly suspicious is that despite alleging failure of performance, both Erkel and Mushrush have admitted that Brown was getting the job done. Apx. 241, para. 26; Ex. C, Mushrush, 49; Ex. D, Erkel Depo., 23, 51-52.

As to the bid for janitorial services, Brown had been instructed by Mushrush and Jill Ross to have the police carry out certain background checks, which she did, and the police failed to do the work. She had informed Mushrush of the problem, and he did nothing about it, but now claims to have disciplined her for it. Apx. 239, 367-68 (para. 45).

As to the phone system for the police department, this task had been assigned to another employee in the finance department due to her expertise. She failed to handle it, so Brown took it back over, and then was delayed by the police

12

department failing to be clear about what they wanted, changing what they wanted, and failing to get into contact with Brown, which caused the delay and addendums. Apx. 239, 368 (para. 45). Mushrush claims he does not know why the phone bid was late, even though he made the termination decision. Ex. C, Mushrush, 62, 64.

Brown is not sure if she made an error on the asphalt bid, but it was easily corrected according to Mushrush. Ex. C, Mushrush, 81.

As to the fire chief's reimbursement as a basis for termination, Mushrush himself admitted that the Chief had not submitted the appropriate paperwork and was therefore not entitled to reimbursement, and that Brown was not at fault in that. Ex. C, Mushrush, 80. Furthermore, the Chief actually owed the City money and so would not have been entitled to reimbursement if he had submitted the appropriate paperwork. Brown informed Erkel and Mushrush of this, but they fired her anyway. Apx. 241, para. 25.

Finally, Brown did ask what was going on during the second investigation and if she was being investigated, because she did not know what was going on or that it was confidential. After Brown was told the matter was confidential, she stopped discussing it with anyone. Apx. 239, 368 (para. 45). Mushrush admits this.

Appellate Case: 12-1730    Page: 22    Date Filed: 05/22/2012 Entry ID: 3914089

**8.    Other instances of discrimination.**

Gene Douglas was employed by the City of Jacksonville as a Senior Parks Maintenance Specialist.  He worked for them for years, did a good job, and had no discipline.  He had hepatitis and took FMLA leave for interferon therapy which caused him to be unable to work.  He also had a back problem that caused him to have pain, numbness and tingling, and required the use of FMLA leave.  Douglas took hydrocodone for pain.  The warning indicates to use caution but imposes no restrictions.  His physician had discussed the issue with him and imposed no restrictions on carrying out his job.  Douglas' supervisors knew he had been doing the job successfully for years on hydrocodone.  Then Jill Ross of HR found out and forced him to use FMLA leave whenever he took hydrocodone, even though he did not need it many of those times.  Douglas informed Ross the doctor had indicated there were no restrictions. This caused Douglas to use up all of his FMLA leave. Douglas retained a lawyer who informed Ross that this was violating his rights under the FMLA and ADA, and she fired him for absences anyway that resulted from being forced to take leave he did not need.  Apx. 243.

Donna Majeske was a dispatcher and resigned in April 1, 2009.  In July 2009, she was told by HR that she would be contacted by a police lieutenant for an interview for a dispatcher's position.  On July 30, 2009, she was contacted and told

Appellate Case: 12-1730    Page: 23    Date Filed: 05/22/2012 Entry ID: 3914089

that she could not be rehired due to use of medical and sick leave.  She felt she was discriminated against based on disability. Ex. E, Def.s' Prod., at 518.  (Apx. 347)

Katherine Jezwinski was fired for going on military leave in violation of USERRA.  *Jezwinski v. Jacksonville*, AR, City of, Case No. 4:08-cv-4211 JMM, D.E. 51, 67 (E.D.Ark. 2011). Jill Ross was involved in that termination and took actions that led directly to it. *Id.*, at D.E. 44, 7-10, D.E. 51, p. 3-4.

Appellate Case: 12-1730     Page: 24     Date Filed: 05/22/2012 Entry ID: 3914089

## SUMMARY OF THE ARGUMENT

Below, Defendants moved for summary judgment on all of Brown's claims. On the disability discrimination claims, the Court found that Brown had not established a disability. However, the Court erred because: (1) the Defendants did not move for summary judgment on that ground; (2) contrary to the Order, Plaintiff did cite to specific evidence establishing a disability; and (3) the Court applied an inappropriate standard to determining the existence of a disability.

Defendant essentially moved on two grounds relevant to his appeal, qualification and discriminatory/retaliatory intent. Defendants incorrectly argued Brown could not provide direct evidence of discriminatory intent. In fact, Brown had direct evidence of retaliatory intent with respect to her complaints of discrimination, and direct evidence of discriminatory intent based on her disability, age, and use of FMLA leave.

In addition, Defendants incorrectly argued Brown could not survive a *McDonnell Douglas* analysis on any of her claims because: (1) she could establish that she was qualified for the position; (2) she cannot meet the intent element of her prima facie case (causation/replacement/comparator/evidence of pretext); and (3) she could not establish pretext.[1]  The qualification argument fails because: (a)

---

[1] Defendants also moved on the grounds that some prior discipline and a promotion were not adverse acts or were time-barred.  Brown was not suing for those as

16

Plaintiff can establish qualification through evidence of performance of the job; and (b) because Defendants is improperly tried to require her to disprove their legitimate, non-discriminatory reason for the termination, in the prima facie case. As to the issues of intent, Plaintiff can establish this through discriminatory and retaliatory comments, timing, comparators, closer supervision, a sudden decline in performance, falsehoods and shifting explanations, breach of their own procedures, and other instances of discrimination.

Thus, the Order granting summary judgment should be reversed and this matter remanded for trial.

## ARGUMENT

The Court should be reversed for the following reasons. First, on the discrimination claim, the Court found Brown had not established disability. This is incorrect for three reasons: (1) the Defendants did not move on that ground; (2) Brown did provide and cite to evidence that supported a claim of discrimination; (3) the Court used an actual disability standard, not a perceived as disabled standard. The Court found that Brown did not establish discriminatory or retaliatory intent. However, Brown provided sufficient evidence to make out claims under both direct evidence and *McDonnell Douglas* proof structures. Accordingly, summary judgment should be reversed.

---

injuries – rather she was raising those events as being relevant to establishing discriminatory and retaliatory intent.

Appellate Case: 12-1730    Page: 26    Date Filed: 05/22/2012 Entry ID: 3914089

On appeal of a grant of summary judgment, the standard of review is *de novo*. As this is the summary judgment stage, all facts must be construed in the light most favorable to the Plaintiff, with all favorable inferences drawn. The Defendant's evidence may be considered to the extent that it "is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). Thus, courts have denied summary judgment even where a statement was uncontradicted, because it came from a witness whose interests were aligned with the moving party. See *Bazan v. Hidalgo County*, 246 F.3d 481 (5th Cir. 2001); *Abraham v. Raso*, 183 F.3d 279, 287 (3rd Cir. 1999) ("Cases that turn crucially on the credibility of witnesses' testimony in particular should *not* be resolved on summary judgment."; *Gooden v. Howard County, Md.*, 954 F.2d 960, 971 (4th Cir. 1992) (Phillips, J., dissenting) ("[B]ecause inevitably – – liability being disputed – – the officer's account will be favorable to himself, the credibility of that account is crucial."). Obviously the last clause in *Reeves* comes because establishing bias is a means of impeachment. This is particularly important in employment cases where much of the evidence will come from witnesses who are employed by Defendant who pay them substantial amounts of money, who have control of their livelihood and ability to support their family, and can fire, promote, demote, transfer, layoff, discipline, or harass them. It should also be noted that employment law allows for

18

contradiction of evidence by indirect means. For instance in cases involving pretext, an employee need not prove every reason given for an adverse action false, if he provides proof that some of those reasons are false. *See Dey v. Colt Construction & Development Co.,* 28 F.3d 1446 (7th Cir. 1994); and *Burns v. AAF-McQuay, Inc.*, 96 F.3d 154, 179 (4th Cir. 1996). In discrimination cases, summary judgment should be granted when only one conclusion is clear because such cases often depend on inferences rather than on direct evidence. *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir. 1994); *Johnson v. Minn. Hist. Soc'y*, 931 F.2d 1239, 1244 (8th Cir. 1991). Plaintiff need only provide proof to survive summary judgment on any given issue if the Defendant has properly supported its motion with proof on that particular point. Furthermore, "Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied *even if no opposing evidentiary matter is presented."* Wright & Miller, Civil 3d, Vol. 10b, Sec. 2739 (citing *Adickes v. S.H. Kress & Co.,* 90 S.Ct. 1598 (1970) and Fed. R. Civ. Proc. 56, Advisory Committee Notes, 1963). The evidence of pretext, is to be considered as a whole, not torn apart individually, and then, because each individual fact on its own would not establish pretext, grant summary judgment. Rather, it is to be added up, viewed in the light most favorable to the non-moving party, and then have the sufficiency of its weight determined. *Thurman v. Yellow Freight Sys.*, Inc., 90 F.3d 1160 (6th Cir. ).

Appellate Case: 12-1730    Page: 28    Date Filed: 05/22/2012 Entry ID: 3914089

There are two means by which Plaintiff can prove discriminatory intent for any of his claims, either through providing direct evidence, or through the *McDonnell Douglas* structure. Summary judgment is not appropriate where direct evidence has been produced. *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004). Under the *McDonnell Douglas* structure, the employee makes out a prima facie case, followed by the employer offering, but not proving to be true, a legitimate, non-discriminatory reason, and the employee in turn being required to provide sufficient evidence that a jury could find that reason to be a pretext for discrimination or retaliation. *Russell v. City of Kansas City*, 414 F.3d 863, 866-67 (8th Cir. 2005). If proceeding under a *McDonnell Douglas* structure, to make out a prima facie case, the employee must establish protected status (age, disability, use of FMLA, complaint of discrimination), that they were qualified for their position, suffered an adverse action, and evidence of intent. Evidence of intent could include a comparator, replacement by someone not in the protected class, or evidence of pretext; or, in the case of a retaliation claim, timing. *Putman v. Unity Health System*, 348 F.3d 732, 736 (8th Cir. 2003) (discrimination); *Balicao v. University of Minn.*, 737 F.2d 747 (8th Cir. 19_) (retaliation).

I. **The District Court incorrectly granted summary judgment on arguments that were not raised by Defendants and which are not supported by the applicable facts or law.**

Summary judgment should not be granted on arguments and facts that were not raised in a Defendant's motion. Here, the Court used such arguments in its Order: that Brown did not establish disability and the same-decisionmaker inference. Even if those arguments had been raised, they would not have been a basis for summary judgment since the facts and law applicable mandate an opposite result.

a. **The Court erred in dismissing the disability claim on grounds that Brown did not establish protected status because: (1) Defendants did not move for summary judgment on that basis; (2) the Court found Brown had not pointed to specifics in the record establishing disability, when in fact she had; (3) the Court analyzed the claim as an actual disability discrimination claim, when it has been brought as a perceived as disabled claim.**

Summary judgment on Brown's claims of disability discrimination should not have been granted because Defendants did not move on that basis, Brown did provide facts establishing disability, and the Court applied an incorrect legal standard. Specifically, the Court held:

> The Court is unable to find any evidence in the record regarding Plaintiff's alleged disability in the eight months that she was employed by the Defendants after her surgery, i.e., whether she was substantially limited in her ability to walk after the surgery. The adverse employment action taken by the Defendants was Plaintiff's termination. There is no evidence regarding Plaintiff's hip or the extent of her limitations at that time. The district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the record for some specific facts that might support the nonmoving party's claim.

Appellate Case: 12-1730   Page: 30   Date Filed: 05/22/2012 Entry ID: 3914089

Apx. 470; Add, at 57 (12 of order).

Defendant did not argue Brown did not have a disability. The introduction and statement of the case in their brief does not dispute whether or not she had a disability or the details of her physical condition. Apx. 59-67. That portion of the Brief dealing specifically with the disability discrimination claims also does not dispute the issue of disability. Apx. 78-82. The only arguments it contains are that: (1) there is no direct evidence of intent; (2) that she was not qualified to perform the job; (3) that she did not suffer an adverse action other than termination; and (4) that she could not establish the legitimate, non-discriminator reason was pretext. Id. The same is true of their Motion for Summary Judgment, which merely list the claims on which they are moving, without describing a basis for the motion beyond incorporating the brief. Apx. 57-58. Finally, a review of their Statement of Undisputed Facts shows that they simply do not allege any facts that are directed at establishing Brown did not have a disability. Apx. 354-69.

Furthermore, Brown filed an EEOC charge and sued on the grounds that she was perceived as disabled, not that she was actually disabled. Brown noted in Paragraph 14 of the "FACTS" portion of her brief, that Mushrush, a decision-maker stated: (1) "Hey old woman, we moving slow," in reference to her hip problem; (2) Mushrush referred to problem again stating "such an old woman, can't even straighten up;" and (3) greeted her with, "Hey, Crip." Apx. 372-73

Appellate Case: 12-1730     Page: 31     Date Filed: 05/22/2012 Entry ID: 3914089

(citing Ex. A, Brown Aff., para. 14 at Apx. 240).  Additionally, in the Response and the "INTRODUCTION" to the Brief in Support, Brown noted each ground on which summary judgment was argued.  Apx. 232-33, 370-71.

In its analysis of protected status under the ADA, the Court focused on whether or not Brown had an actual disability, which was not the issue.  Instead, the 'regarded as' prong is rather simpler.  Calling an employee "platehead" due to his having a plate in his head and a seizure disorder creates a fact issue as to the perception of him being disabled.  *Shaver v. Independent Stave Co.*, 350 F.3d 716 (8th Cir. 2003).  Use of stereotypes will also establish the perception.  *School Board of Nassau County, Fla., v. Arline*, 480 U.S 273 (1987).  Here she was literally called "crip" told she was "moving slow" and "can't even straighten up."

> **b. The Court erred in applying the same decision-maker inference since the issue was not raised by Defendant, the facts and law do not support that inference, and it violates the summary judgment standard.**

It should be noted that the Court's holding on the same-decision-maker inference, would only be applicable to the age claim based on the Court's premises.  The Court held that:

> In contrast, the Defendants have provided evidence that Musrhush is older than the Plaintiff.  Plaintiff was hired in 1998 when she was 46-47 years old.  The Eighth Circuit has "noted it is unlikely a supervisor would hire an older employee and then discriminate on the basis of age, and such evidence creates a presumption against discrimination.

23

Apx. 468 Add 55 (Order at 10). The first problem with this assertion is that while the facts do discuss Brown's hiring date, they do not discuss who actually made the hiring decision, beyond "the City." See Apx. 94 (para. 1-3), 103, 211. Nor does the Defendants motion or brief state such facts. Apx. 57-78. Thus, there was no basis for finding that Mushrush hired her.

Second, the same-decision-maker inference is not applicable when some of the decision-makers vary from the original set. *O'Bryan v. KTIV Television*, 64 F.3d 1188, 1193 (8th Cir. 1995). Here, Jill Ross and Cheryl Erkel were also involved in the decision. Apx. 342. Third, in age discrimination case, the inference should not applicable when there is a significant change or lapse of time between the hiring and adverse action, since the person may be perceived as old, when they were not when they were initially hired. *Herr v. Airborne Freight Corp.*, 130 F.3d 359, 362-63 (8th Cir. 1997) ("There is a strong inference was not a motivating factor if the same person hired and fired the plaintiff within a relatively short period of time."). Here, there was a 12 year lapse. Fourth, the same decision-maker inference is not applied where there is direct evidence, such as Mushrush's comments. *Madel v. FCI Marketing, Inc.*, 116 F.3d 1247 (8th Cir. 1997). Fifth, the same-decisionmaker inference might be appropriate as a jury instruction at trial, but it should not be permitted on summary judgment when all inferences must be drawn in the non-moving party's favor, so long as a fact issue has been raised.

24

*Wexler v. White's Fine Furniture*, 317 F.3d 564, 573-74 (6th Cir. 2003); *Kells v. Sinclair Buick-GMC Truck, Inc.*, 210 F.3d 827, 835 (8th Cir. 2000).

**II.    Summary judgment should not have been granted on the claims of retaliation for complaining of discrimination, because: (a) Brown had direct evidence in the form of comments from Cheryl Erkel, combined with evidence of timing, different treatment, closer supervision, and increased discipline following protected activities.**

The term direct evidence is refers to the strength of the evidence of intent, showing a "specific link between the alleged discriminatory animus and the challenged decision. *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir. 1997). Thus, whether the evidence is circumstantial, or discriminatory or retaliatory comments, it could be direct evidence. *Griffith*, 387 F.3d at 736. This is consistent with *Desert Palace, Inc. v. Costa*, which eliminated any basis for a distinction between circumstantial and direct evidence. *See Bobo v. United Parcel Service*, 665 F.3d 741, 756-57 (6th Cir. 2012) and *Coleman v. Donahoe*, 667 F.3d 835, 862-63 (7th Cir. 2012). Perhaps the best example of circumstantial evidence constituting direct evidence has been delivered in *Russell v. City of Kansas City*:

> [w]hen two co-workers who are the alleged victims of misconduct deny that misconduct occurred and assert that the plaintiff is herself the victim of discrimination by the employer, that may well be direct evidence of discrimination sufficient to withstand the employer's motion for summary judgment. And if this testimony is not by itself sufficient, it is a powerful showing of the pretext needed to defeat summary judgment under *McDonnell Douglas*.

414 F.3d at 867.

Appellate Case: 12-1730    Page: 34    Date Filed: 05/22/2012 Entry ID: 3914089

In cases involving circumstances where the employer cites as a reason for discharge facts related to an allegation of discrimination, the Eighth Circuit has repeatedly indicated that judgment for the employer is not appropriate. For instance, in *Womack v. Munson*, 619 F.2d 1292 (8th Cir. 1980), the Eighth Circuit actually reversed the trial court and directed entry of judgment for the plaintiff. In that case, a Sheriff's deputy filed an EEOC charge against the Sheriff, alleging that he had been called into witness or participate in the abuse of black prisoners by white deputies, because he himself was black. *Id.*, at 1295. The deputy began working for the state prosecutor as an investigator, and the prosecutor found out about his claims against the Sheriff. The prosecutor ultimately fired the deputy, claiming as the reason that the deputy had participated in abusing black prisoners, and then later lied by denying it. The Eighth Circuit held that "the admission and denial of abuse by Womack are so inextricably related to the allegation in the complaint that they cannot be considered independently of one another." *Id.*, at 1297.

In *Pye v. Nu Aire, Inc.*, 641 F.3d 1011 (8th Cir. 2011), Pye was black and submitted a form for housing assistance. During this process he was subjected to rudeness and delays, and called "nigger goon," so he complained. HR met with Pye. They characterized his statements during that meeting as an effort to shake them down for a promotion, company car, and money "for his trouble" and said he

Appellate Case: 12-1730    Page: 35    Date Filed: 05/22/2012 Entry ID: 3914089

said he did not want to go to the next step because Nu Aire could go out of business. Pye was fired, allegedly for that reason. He said it was not a shakedown. Summary judgment was granted, but the Eighth Circuit reversed, holding fact-questions existed as to what Pye had said and, in the light most favorable to him, his statements were protected. *Id.*, at 1020-21. Nu Aire's admission that his termination was related to his statements constituted direct evidence, even though they claimed it was because they believed it was a shakedown. *Id*, at 1021. The case was also analyzed under *McDonnell Douglas.* The Court found there was a protected act, and that causation was established by timing. *Id*, at 1021-22. At the pretext stage, the Court rejected the good-faith, honest belief defense, holding that because the proffered reason for the termination "was inextricably intertwined with the protected conduct," a "reasonable jury could find that Pye engaged in nothing more than reasonable, good faith opposition to unlawful practices and find NuAire's explanation for Pye's termination to be 'unworthy of credence.'" *Id.*, 1023.

In *Gilooly v. Missouri Dep't of Health and Sr. Svcs.*, 421 F.3d 734, 740-41 (8th Cir. 2005), the employee investigating allegations of discrimination determined that the plaintiff had lied based on witness interviews. The plaintiff was fired, supposedly for lying about discrimination, not for alleging discrimination. The Court held lies about discrimination were not protected, but that an investigator's

27

belief that plaintiff lied could not be the basis for summary judgment as the legitimacy of the investigator's belief was for a jury. The truth or falsity of statements in such an investigation, and a defendant's belief about those was too closely related to a possible protected activity for decision at summary judgment. *Id.*

As the District Court noted, "Defendants stated on the record that Plaintiff would probably not have been fired but for the investigation into her allegations." Order, at 9, Apx. 467, Add 54. Erkel, who had a role in the decision, repeatedly indicated that Brown's allegations of discrimination and retaliation were insubordinate, including immediately before the investigation that led to Brown's termination. *See Staub v. Proctor Hosp.*, 131 S.Ct. 1186 (2011) (holding that supervisor with illegal intent who influences the decision, even where the decision-maker is innocent, creates employer liability). Furthermore, given his comments, and his awareness that Erkel had been accused of retaliation, Mushrush cannot be described as an innocent decision-maker. As above, a reasonable jury could find that these statements are so interrelated to Brown's allegations that there is a retaliation claim.

In addition to that evidence, there is other evidence, of a type normally considered to be circumstantial, which would make out the causation and pretext elements of a case under *McDonnell Douglas*, and would also constitute direct

28

evidence when added to the evidence described above, as it strengthens that evidence.

As to the issue of timing, the Eighth Circuit has held that a prima facie case was made out by timing where the plaintiff complained in November 1979, settled in July 1980, and was fired in November 1980. *Balicao v. University of Minn.*, 737 F.2d 747 (8th Cir. 1984). Three months sufficed in *Greenwood v. Ross*, 778 F.2d 448 (8th Cir. 1985). Here, Brown had complained of discrimination internally in April 2009. In May 2009, she started being investigated, for the same exact thing of which she had complained. As a result, in May 2009, she filed a charge of discrimination. In June of 2009, she was fired based on problems with performance or conduct which she denies or which were caused by the ludicrous restriction of a salaried employee to a forty hour week that applied to no one else, some of which resulted from the retaliatory investigation of May 2009.

Notably, there is other evidence which, when combined with that above, merits a jury trial, as they establish causation, pretext and direct evidence. In *Kellin v. ACF Industries*, 629 F.2d 532 (8th Cir. 1980), there was a trial on the merits which resulted in dismissal of the claims of racial and retaliatory discharge. The Eighth Circuit, applying a 'clear error' standard, reversed the trial court on the retaliation claims. There, the employee had filed an EEOC charge in 1971. His disciplinary record played a role in his termination. The employee had been

Appellate Case: 12-1730    Page: 38    Date Filed: 05/22/2012 Entry ID: 3914089

disciplined twice in 1971, thrice in 1970, once in 1969, twice in 1968 and 1967. However, in 1972 he was disciplined 10 times, and five times in 1973. The Court found that the increased level of discipline had not been considered, and, based on the surrounding facts, could lead to a different result. Here, the matter was resolved on summary judgment, where factual inferences are to be drawn in Brown's favor, and there is no deference to the District Court. Brown had not been disciplined until she filed a charge of discrimination. She had been a successful employee for years. Indeed, even during the 2008-2009 time frame, Erkel and Mushrush indicated that the job was getting done. Brown then complained of retaliation and discrimination in April, and was investigated, admittedly as a direct result of her allegations in May. She filed a charge in May with the EEOC and was fired in June.

In *Kellin*, the Eighth Circuit directed that on remand, the District Court consider whether or not the discipline was valid, as that might change the result. Here, Brown has denied the validity of the discipline. As to creating a hostile work environment, Brown denies it; and, more importantly, her two supervisors, the decision-makers, when pressed for specifics, could not name anything she had actually done to create that environment. As to not getting her work done, the decision-makers say that she did get it done. As to the specifics on job performance in her final writeup, those allegations were false because: (1) she was

30

accused of screwing up things that were actually assigned to other people, and the decision-makers knew quite well that other people had taken point on those issues (e.g., phone bid, janitorial services bid, fire chief); (2) she had not done anything wrong (e.g., fire chief actually owed money and had not submitted paperwork to permit reimbursement). When the performance or conduct problems that form the basis for discipline are disputed, this is evidence of pretext and causation. *See Young v. Warner-Jenkinson Co.*, 152 F.3d 1018 (8th Cir. 1998); *Keys v. Lutheran Family & Children's Svcs*, 668 F.2d 356 (8th Cir. 1981) (finding two month interval and denial by employee of having caused the morale problems as she was accused of doing created a fact issue).

Shifting or false reasons for conduct are evidence of pretext. *Young*, at 1023-24. When an employer acts inconsistently with those policies and practices, that is evidence of pretext/discrimination. *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624-25 (8th Cir. 1995). Courts have also recognized that where a witness has been, or could be considered to be false in one area of the case, he may also be false in his legitimate, non-discriminatory reason. *Dey v. Colt Construction & Development Co.*, 28 F.3d 1446 (7th Cir. 1994); and *Burns v. AAF-McQuay, Inc.*, 96 F.3d 154, 179 (4th Cir. 1996). Courts also more closely scrutinize subjective reasons for adverse job actions. *Widoe v. District No. 111 Otoe County School*, 147 F.3d 726, 730 (8th Cir. 1998) and *Lyoch v. Anheuser-Busch Cos.*, 139 F.3d 612,

Appellate Case: 12-1730     Page: 40     Date Filed: 05/22/2012 Entry ID: 3914089

615 (8th Cir. 1998). When an employer acts inconsistently with those policies and practices, that is evidence of pretext/discrimination. *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624-25 (8th Cir. 1995). Courts have also recognized that where a witness has been, or could be considered to be false in one area of the case, he may also be false in his legitimate, non-discriminatory reason. *Dey v. Colt Construction & Development Co.*, 28 F.3d 1446 (7th Cir. 1994); and *Burns v. AAF-McQuay, Inc.*, 96 F.3d 154, 179 (4th Cir. 1996). Pretext can be shown where a plaintiff is treated worse than a similarly situated person not in the protected class. *Wilmington v. J.I. Case Co.*, 793 F.2d 909 (8th Cir. 1986). In addition, more favorable treatment of persons not in the protected class, who are not similarly situated, can be relevant to establishing pretext, because it can establish an employer's actual practices, and thus whether or not plaintiff was treated consistently with those practices. *Willnerd v. First National Nebraska, Inc.*, 558 F.3d 770 (8th Cir. 2009) (finding it relevant to pretext that two employees not in the protected class, who were in different positions, were not punished for not meeting goal, while the plaintiff was). A long period of tension, closer supervision, and snubs can help establish intent, even though there was a period of more than nine months between the protected activity and termination. *Graves v. Arkansas Dep't of Fin. and Admin.*, 229 F.3d 721 (8th Cir. 2000). A sudden decline in performance can evidence pretext. *Davis v Fleming Cos., Inc.*, 55 F.3d 1369, 1370 (8th Cir.

32

1995). Breaching one's own policies is evidence of pretext. *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1024 (8th Cir. 1998). The fact that retaliatory decisions were made by individuals accused of discrimination is evidence of pretext. *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 770 (2d Cir. 1998).

*Shifting explanations, illogical explanations, different treatment/comparators:* Defendants claim that she was fired for not doing her work fast enough, but say she got the job done. Defendants claim that she was not getting her work done fast enough, but will not let her work a little over on nights and weekends to get that work done, even though she is salaried and it costs them no money. Defendants will not let her work over forty hours, though they themselves do it. Defendants say ask for help if you need it, but when she does, refuse to give it to her. These constitute shifting and illogical explanations for their conduct.

*Closer supervision, different treatment:* Defendants send her e-mails every other week regarding her efficiency, but do this with no one else, even though she was meeting their mark. They did not even do this when she was off work for 12 weeks and someone else was doing her same job.

*Drastic decline in performance, false and shifting explanations*: prior to her May 2007 charge, she had not been disciplined. Then she gets disciplined for working after 5 – horrors. They say she did not get a bid out on time in April

33

2009, yet know it had been slowed by the conduct of other people. They say she could not find a file, yet they had reorganized her files while she was on medical leave, without consulting her, and all kinds of people had access to that file, so that anyone could have lost it – yet she is disciplined. They claim that she created a hostile work environment, yet there is not any evidence to suggest she did, from the mouths of the decision-makers. They claim that she caused the phone bid to be late, yet the evidence is that other persons were responsible for this and defendants knew it. They claim she violated the confidentiality of the investigation of her, yet she was not told there was something confidential going on at first, and stopped asking when she was told it was confidential. They claim Bratton told Ross there was a hostile work environment, yet he said nothing like that.

Furthermore, Defendants' own Reply establishes the shifting explanations. It states that:

> "The Plaintiff minimizes the scope of the basis that led to her termination  In sort, **she was not terminated because she did not do her work fast enough**.  Rather, the Plaintiff was terminated as a result, inter alia, of an extended internal investigation by Ms. Erkel and HR Director Jill Ross, lasting from May 21 until June 8, 2009 indicating the Plaintiff was causing a hostile work environment for other workers."

Apx. 402 (emphasis added). Yet less than a page later, Defendants claim: " . . . the reasons for the Plaintiff's termination certainly include her **inefficient work**

Appellate Case: 12-1730    Page: 43    Date Filed: 05/22/2012 Entry ID: 3914089

**performance** . . . .” Apx. 402-03 (emphasis added). The two statements are polar opposites.

*Breach of their own procedures, decision-makers are persons accused of discrimination:* the process is to go from verbal, to written, to suspension, to termination. They started with a written warning, and went to termination. Erkel was not supposed to be involved in the investigation of Brown's allegations, yet got to conduct the investigation, sitting and watching her subordinates be asked questions about her conduct. Of course they said nothing. Erkel was not supposed to be involved in investigating her own department, yet she conducted the investigation of Brown. Erkel recommended termination and Mushrush made the decision, with Ross' advice as HR Director.

## III. Summary judgment on the disability, age, and FMLA retaliation claims was not appropriate because Brown provided direct evidence, established qualification, and could also survive summary judgment on a *McDonnell Douglas* analysis.

### A. Plaintiff provided direct evidence of discriminatory intent as to age and disability based on the comments of Mushrush.

The District Court erroneously found that comments from one of the decision-makers, Mushrush, calling Brown, an old woman, telling her that she is moving slow, and calling her cripple, were not direct evidence as to her disability or age claims. The Court argued that these comments had been made 2-3 years

35

before her termination. However, its ruling was contrary to long established case law in the Eighth Circuit.

In *Hardin v. Hussman Corp.*, 45 F.3d 262, 263, 266 (8th Cir. 1995), the Eighth Circuit held that comments by a supervisor in 1981, shortly after the plaintiff had been hired, that it was unusual to hire an engineer over the age of forty, were probative of intent in his discharge, *eight years later* in 1989. Comments made in contexts or time frames other than the decision itself have also been held to be probative of intent. *Hartley v. Dillards, Inc.*, 310 F.3d 1053 (8th Cir. 2002). Furthermore, it is hardly surprising that Mushrush stopped given that Brown filed an EEOC charge alleging disability discrimination. Changes in conduct that occur after litigation has commenced are with suspicion. *Craik v. Minnesota St. Univ. Bd.*, 731 F.2d 465 (8th Cir. 1984). After all, "[d]efendants of even minimal sophistication will neither admit discriminatory animus nor leave a paper trail demonstrating it...." *Estes v. Dick Smith Ford Inc.*, 856 F.2d 1097, 1103 (8th Cir.1988) (quoting *Riordan v. Kempiners*, 831 F.2d 690, 697-698 (7th Cir.1987)).

Additionally, evidence of retaliatory motives can be used to prove discriminatory intent, and vice versa. *Hawkins v. Hennepin Tech. Ctr.*, 900 F.2d 153, 155 (8th Cir. 1990), *cert. den'd* 111 S.Ct. 150 (1990). Thus, Erkel's retaliatory statements should be considered as part of the whole when considering

Appellate Case: 12-1730    Page: 45    Date Filed: 05/22/2012 Entry ID: 3914089

if there is direct evidence of discriminatory intent based on age and disability, especially given that these statements were made multiple times between Mushrush's comments and her termination, including during the investigation that led to Brown's termination.

Furthermore, as discussed above, "direct" evidence in this context refers to the strength of the evidence and does include circumstantial evidence. The evidence already discussed, when combined with the circumstantial evidence discussed in the section on retaliation above, constitute direct evidence. Had Brown been left alone without incident for two years, and then fired for performance, perhaps Mushrush's comments would not be relevant or constitute direct evidence. However, the fact is that following his comments, and her charge of discrimination arising from them, Brown was subjected to a long period of closer supervision, restrictions on doing her job that are illogical and were not applied to anyone else, punished for not getting enough work done when restricted to a forty hour week, disciplined based on allegations the decision-makers knew to be spurious, and investigated after further complaints of discrimination, all of which led to her termination. Accordingly, the comments constitute direct evidence.

**B.** **Brown made out a prima facie case under *McDonnell Douglas* as to qualification by virtue of having done the job, successfully, for years – the only bases for disputing qualification were also**

Appellate Case: 12-1730    Page: 46    Date Filed: 05/22/2012 Entry ID: 3914089

**Defendants' legitimate, non-discriminatory reason, and she is not required to disprove that reason in the prima facie case.**

The threshold of proof necessary for a prima facie case is minimal, and the burden is not onerous. *Davenport v. Riverviews Gardens Sch. Dist.*, 30 F.3d 940, 944 (8th Cir. 1994)). The qualification element is not to be made more difficult to meet at the prima facie stage by requiring an employee to disprove the legitimate, non-discriminatory reason. *Id.*, at 944-45. In this case, the reasons offered by Defendants to establish Brown was not qualified are the same as those constituting the legitimate, non-discriminatory reason, and accordingly are not appropriately considered at this stage of the case. Furthermore, they are disputed by Brown, and, under the summary judgment standard, are not accorded any weight as such. Finally, the District Court found Brown met the qualification element of her prima facie case, stating:

> The Plaintiff has come forward with evidence to show that she was meeting the Defendants' expectations. She was employed by the City for eleven (11) years. Further, Defendants stated on the record that Plaintiff would probably not have been fired but for the investigation into her allegations. In other words, while Plaintiff may not have been the most efficient worker, Defendants were not planning to fire her for her poor performance. She was meeting their basic needs as the Purchasing Manager.

Apx. 467; Add.54 (Order, at 9). The Court was correct on this point.

**C. Brown could establish the intent element of the prima facie case and pretext on her age, disability, and FMLA retaliation claims.**

The means of establishing a prima facie case and pretext have been discussed above. Much of Brown's evidence has already been discussed. For instance, on the age and disability claims, Brown has already discussed the comments of Mushrush. As retaliation may make discrimination more likely to have occurred as discussed above, the sections above on retaliation are also relevant. In addition, the circumstantial evidence discussed in the retaliation section above would also serve to establish pretext on her disability, age, and FMLA discrimination claims. Accordingly, Brown will limit this portion of the brief to discuss one additional type of evidence, other instances of discrimination.

In *United Airlines v. Evans*, 431 U.S. 553, 558 (1977), the United States Supreme Court held that even time-barred acts "may constitute relevant background evidence in a proceeding in which the status of a current practice is at tissue." The Eighth Circuit has followed this logic, allowing evidence of discriminatory acts to be used, where they occurred before the actionable period, during the actionable period, and after the Plaintiff's termination. *See respectively Kimzey v. Wal-Mart Stores, Inc.*, 107 F.3d 568 (8th Cir. 1995); *Denesha v. Farmers Ins. Exch.*, 161 F.3d 491, 500 (8th Cir. 1998); and *Stacks v. Southwestern Bell Yellow Pages, Inc.*, 27 F.3d 1316 (8th Cir. 1994). The Eighth Circuit has permitted "pattern and practice" to prove individual cases of discrimination as circumstantial evidence in that case. See, e.g., *Greene*, 98 F.3d at 561.

39

In *Bagget v. Program Resources, Inc.*, 806 F.2d 178 (8th Cir. 1986), evidence of gender-biased decisions made by supervisors other than the Plaintiff's after the discrimination she suffered were held to admissible because there was no evidence that the Defendant's practices had changed. In *Estes v. Dick Smith Ford Inc.*, 856 F.2d 1097, 1103 (8th Cir.1988), the Eighth Circuit recognized "It is difficult to say that a background of discrimination is not relevant to proving a particular instance." In *Hawkins v. Hennepin Tech. Ctr.*, 900 F.2d 153 (8th Cir. 1990), *cert. den'd* 111 S.Ct. 150 (1990), the Eighth Circuit allowed evidence of past sexual harassment the plaintiff and others had suffered even though the harassment had occurred years before at the hands of different people. *Id*. at 155. Furthermore, the discriminatory acts, which led to the lawsuit did not actually involve sexual harassment, but instead involved retaliatory layoffs, denial of bumping privileges, and failure to recall. Id. In that case the Eighth Circuit also allowed this evidence to be used with respect to the retaliation claim because an atmosphere of sexual harassment increased the likelihood that there was retaliation. *Id*. In *White v. Honeywell, Inc.*, 141 F.3d 1270 (8th Cir. 1998) evidence of a past discriminatory statement was allowed because it could be used to show an atmosphere of discrimination, although the statement was made by someone not in the plaintiff's chain of command. *Duckworth v. Ford*, 83 F.3d 999 (8th Cir. 1996). In *Phillips v. ANR Freight Sys.*, 945 F.2d 1054 (8th Cir. 1991) the district court was reversed

40

where it refuse to admit evidence of other age discrimination lawsuits because they were not similar enough to the plaintiff's lawsuit. The Court held that such lawsuits could be used to show that the employer's proffered legitimate, non-discriminatory reason was false. *See also Brine v. University of Iowa*, 71 F.E.P. 490 (8th Cir. 1996). See also *Jaros v. LodgeNet Entertainment Corp.*, 294 F.3d 960 (8th Cir. 2002) (admitting evidence of other discrimination).

Here, Jill Ross, who was involved in the decision to terminate Brown, has been involved in the discriminatory treatment of persons who had a disability or used medical or some other kind of leave: Gene Douglas, Kathryn Jezwinski, and Donna Majeske. In addition, Erkel was promoted over Brown, completely outside of and in violation of Jacksonville's normal procedures.

Appellate Case: 12-1730     Page: 50     Date Filed: 05/22/2012 Entry ID: 3914089

## <u>CONCLUSION</u>

WHEREFORE, PREMISES CONSIDERED, Appellant June Brown asks that this court reverse the order granting Appellees' summary judgment on her claims for disability and age discrimination, retaliation for filing an EEOC charge, and retaliation under the FMLA, and remand for further proceedings.

Respectfully submitted,

SUTTER & GILLHAM, PLLC
Attorneys at Law
Post Office Box 2012
Benton, Arkansas 72221-6321
501/315-1910

By:    */s/ Lucien Gillham*
Lucien Gillham, Ark. Bar No. 99199
lucien.gillham@sbcglobal.net

42

## CERTIFICATE OF SERVICE OF APPELLANT'S BRIEF
## AND CERTIFICATE OF COMPLIANCE

I do hereby certify that a true and correct copy of the foregoing has been served upon the following parties of record by ECF/CM on this 21st day of May, 2012, having been submitted to the Court for review:

John Wilkerson
Arkansas Municipal League
301 W. Second St.
P. O. Box 38
North Little Rock, AR 72115

Robert Bamburg
303 N. James
P. O. Box 5913
Jacksonville, AR 72076

This brief complies with the limitations specified in Fed. R. App. P. 32(a)(7)(B) and (C). Appellant prepared this brief with Microsoft Word in 14 point, Times New Roman typeface. This argument portion of this brief contains 6,383 words.

*/s/ Lucien Gillham*
Lucien Gilliam

Appellate Case: 12-1730    Page: 52    Date Filed: 05/22/2012 Entry ID: 3914089

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHT CIRCUIT

---

### NO. 12-1730

---

### JUNE BROWN

**Plaintiff-Appellant**

**vs.**

### CITY OF JACKSONVILLE; PAUL MUSHRUSH; CHERYL ERKEL

**Defendants-Appellees**

**On Appeal from the United States District Court
For the Eastern District of Arkansas, Little Rock Division
Case No. 4:10-CV-1637 JMM
The Honorable James M. Moody, District Judge**

---

## APPELLANT'S ADDENDUM

---

1. Order of February 24, 2012 ...............................................(Apx. 459) Add 46

2. Judgment of February 24, 2012 ......................................(Apx. 473) Add 62

3. Plaintiff's Notice of Appeal ...........................................(Apx. 476) Add 63

44

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that a true and correct copy of the Appellant's Addendum has been served via electronic means, ECF/CM on this, the 21st day of May, 2012, upon counsel for Appellees:

John Wilkerson
Arkansas Municipal League
301 W. Second St.
P. O. Box 38
North Little Rock, AR  72115

Robert Bamburg
303 N. James
P. O. Box 5913
Jacksonville, AR  72076

*/s/Lucien Gillham*
Lucien Gillham

Appellate Case: 12-1730     Page: 54     Date Filed: 05/22/2012 Entry ID: 3914089