No. 12-1730

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

JUNE BROWN,
Appellant

v.

CITY OF JACKSONVILLE; PAUL MUSHRUSH and CHERYL ERKEL
Appellees

Appeal from the United States District Court
for the Eastern District of Arkansas, Western Division
No. 4:10-CV-1637 JMM

The Honorable James M. Moody
United States District Judge

## THE BRIEF OF THE APPELLEES

John L. Wilkerson
Attorney at Law
PO Box 38
North Little Rock, AR 72115
Telephone (501) 978-6136
Facsimile (501) 5377268
jwilkerson@arml.org

## Summary of the Case

June Brown ("Ms. Brown"), the Appellant, a former employee of the City of Jacksonville was terminated for failure in performance of duties, and failure in personal conduct. Following her termination, Ms. Brown brought suit against the City of Jacksonville, Paul Mushrush, and Cheryl Erkel, the Appellees, for alleged Title VII, FMLA, ADA, and ADEA violations. The district court granted the Appellee's motion for summary judgment. This appeal presents the following issue: Whether the district court properly granted summary judgment for the Appellees with regard to Ms. Brown's ADA, ADEA, FMLA, and Retaliation claims.

## Statement with Respect to Oral Argument

The Appellees contend that this case presents no significant issues of law. And, because the Appellant's claims fail on the merits, oral argument is unnecessary.

Appellate Case: 12-1730    Page: 2    Date Filed: 07/13/2012 Entry ID: 3931611

# Table of Contents

Summary of the Case ..................................................................... i

Statement with Respect to Oral Argument ................................... i

Table of Contents ......................................................................... ii

Table of Authorities .................................................................... v

Statement of the Issues ............................................................... 1

Statement of the Case ................................................................. 3

Statement of the Facts ................................................................ 4

Summary of the Argument ........................................................ 13

Argument ................................................................................... 15

I.    The District Court Did Not Incorrectly Grant Summary
      Judgment based on Un-Raised Issues, and Ms. Brown Failed
      to Make a Prima Facie Case for ADA or ADEA
      Discrimination. ............................................................... 18

      a. Ms. Brown Was Not a Qualified Individual under the ADA,
         and, regardless, she fails to Establish an ADA
         Discrimination Claim ................................................. 19

         1. Ms. Brown Was Not Qualified to Perform the Essential
            Functions of her Job .............................................. 22

         2. Ms. Brown Did Not Suffer an Adverse Employment
            Action Due to Her Disability .................................. 25

         3. Ms. Brown was Terminated for Legitimate Non-
            Discriminatory Reasons ......................................... 27

         4. Ms. Brown Failed to Show Pretext ......................... 32

Appellate Case: 12-1730    Page: 3    Date Filed: 07/13/2012 Entry ID: 3931611

b. The Same Decision-Maker Inference was Properly Applied, and, regardless, Ms. Brown Fails to Establish an ADEA Discrimination Claim .......................................................... 38

    1. Ms. Brown was not Meeting her Employer's Legitimate Work Expectations ........................................................ 41

    2. Ms. Brown Was Not Replaced By Someone Younger ......................................................................... 41

    3. Ms. Brown was Terminated for Legitimate Non-Discriminatory Reasons which She Failed to Rebut as Pretext ........................................................................... 41

II. The District Court Properly Granted Summary Judgment on Ms. Brown's Retaliation Claim .................................................. 42

a. Ms. Brown Did Not Show Evidence of a Causal Connection, Direct or Otherwise ................................................................ 45

b. Ms. Brown was Terminated for Legitimate, Non-Discriminatory Reasons, and she failed to rebut those reasons as pretext .................................................................. 51

III. Ms. Brown presented No Direct Evidence of her Discrimination Claims and the District Court Properly Granted Summary Judgment on Ms. Brown's remaining FMLA Retaliation Claim ......................................................................................... 51

a. Ms. Brown Presented No Direct Evidence............................ 53

b. Ms. Brown Fails to Establish a Prima Facie Case for FMLA Retaliation .............................................................................. 56

    1. Ms. Brown Did Not Suffer an Adverse Employment Action as a Result of Age, Disability, or use of FMLA leave............................................................................... 56

Appellate Case: 12-1730     Page: 4     Date Filed: 07/13/2012 Entry ID: 3931611

2.  Ms. Brown Was Terminated for Legitimate, Non-Discriminatory  Reasons & Failed to Show Pretext ... 62

Conclusion ................................................................................ 66

Certificate of Compliance ......................................................... 67

Certificate of Service .............................................................. 67

iv

# Table of Authorities

## Cases

*Bearden v. International Paper Company*, 628 F.Supp.2d 914
(E.D. Ark. 1997) ..................................................................... 39

*Caudill v. Farmland Industries, Inc.,* 919 F.2d 83 (8th Cir. 1990) .. 1, 47

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ................................... 1, 16

*Chivers v. Wal-Mart Stores, Inc.*, 641 F.3d 927 (8th Cir. 2011).......... 27

*Conant v. City of Hibbing*, 271 F.3d 782 (8th Cir. 2001) ..................... 21

*Counts v. MK-Ferguson Co.,* 862 F.2d 1338 (8th Cir. 1988) ............... 16

*Edmund v. Midamerican Energy Co.,* 299 F.3d 679
(8th Cir. 2002)..................................................................... 2, 28

*Gilbert v. Des Moines Area Community College*, 495 F.3d 906
(8th Cir. 2007)..................................................................... 1, 19

*Hannoon v. Fawn Eng'g Corp.,* 324 F.3d 1041 (8th Cir. 2003)......... 2, 28

*Hardin v. Hussmann Corp.*, 45 F.3d 262 (8th Cir. 1995) .............. 54, 55

*Jackson v. United Parcel Service, Inc.*, 643 F.3d 1081
(8th Cir. 2011)..................................................... 1, 42, 43, 51

*Johnson v. Runyon*, 137 F.3d 1081 (8th Cir. 1998).............................. 23

*Kasper v. Federated Mut. Ins. Co.*, 425 F.3d 496 (8th Cir. 2005)........ 28

*Kauffman v. Fed. Express Corp.*, 426 F.3d 880 (7th Cir. 2005) ........... 57

*Kipp v. Missouri Highway and Transportation Comm'n*,
280 F.3d 893 (8th Cir. 2002) ............................................... 61

*McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998
(8th Cir. 2005)........................................................................ 61

*McGinnis v. Union Pacific R.R.*, 496 F.3d 868 (8th Cir. 2007)............. 39

Appellate Case: 12-1730      Page: 6      Date Filed: 07/13/2012 Entry ID: 3931611

*Miller v. Citizens Sec. Group*, 116 F.3d 343 (8th Cir. 1997)................. 23

*O'Connor v. Consolidated Coin Caterers Corporation*,
517 U.S. 308 (1996)..................................................................... 39

Quinn *v. St. Louis Cnty.*, 653 F.3d 745 (8th Cir. 2011) .................... 1, 52

*Quiroga v. Hasbro, Inc.,* 934 F.2d 497 (3d Cir.1991) ............................ 47

*Reeves v. Sanderson Plumbing Products, Inc.,*
530 U.S. 133 (2000)................................................................ 32, 44

*Riley v. Lance, Inc.*, 518 F.3d 996 (8th Cir. 2008)................................ 32

*Russell v. City of Kansas City, Missouri*, 414 F.3d 863
(8th Cir. 2005)............................................................... 1, 45, 46

*Shaver v. Indep. Stave Co.*, 350 F.3d 716 (8th Cir. 2003) ............... 1, 21

*Stanback v. Best Diversified Products, Inc.*, 180 F.3d 903
(8th Cir. 1999)...................................................... 1, 2, 20, 42, 52

*Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1192 L. Ed. 2d 144
(2011)........................................................................................ 50

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999) ......................... 21

*Thomas v. Corwin,* 483 F.3d 516 (8th Cir. 2007) ................................. 39

*Thomas v. First Nat. Bank of Wynne*, 111 F.3d 64
(8th Cir. 1997)...................................................... 1, 43, 45, 54

*Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) ...... 17, 55

*Tusing v. Des Moines Indpendent Community School District,*
639 F.3d 507 (8th Cir. 2011) ............................................... 1, 20

*Waldron v. Boeing Co.,* 388 F.3d 591 (8th Cir. 2004) .......................... 16

*Ward v. Int'l Paper Co.,* 509 F.3d 457 (8th Cir. 2007) ......................... 27

*Wierman v. Casey's Gen. Stores,* 638 F.3d 984 (8th Cir. 2011) ........... 65

vi

*White v. McDonnell Douglas Corp.*, 904 F.2d 456 (8th Cir. 1990) ....... 19

*Whitley v. Peer Review System*, 221 F.3d 1053 (8th Cir. 2000).......... 23

*Wilcox v. State Farm Mut. Auto. Ins. Co.*, 253 F.3d 1069
(8th Cir. 2001) .................................................................................. 17

*Wilking v. County of Ramsey*, 153 F.3d 869 (8th Cir. 1998) ............... 23

## Statutes

42 U.S.C. § 12102(2)(B) ......................................................................... 21

42 U.S.C. § 12111(8) .............................................................................. 21

## Rules

Fed. R. Civ. P. 56(c) ........................................................................ 16, 38

Fed. R. Civ. P. 32 (a)(7)(B) ................................................................... 67

8th Cir. R. 28A(h)(2) ............................................................................. 67

Appellate Case: 12-1730    Page: 8    Date Filed: 07/13/2012 Entry ID: 3931611

## Statement of the Issues[1]

1. *Whether the district court improperly granted summary judgment as to Ms. Brown's ADA and ADEA claims when it relied, in part, on factors not fully expounded on in the briefs, but present in the record, when finding Ms. Brown failed to make a prima facie case for either claim.*

   *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)

   *Gilbert v. Des Moines Area Community College*, 495 F.3d 906 (8th Cir. 2007)

   *Tusing v. Des Moines Indpendent Community School District*, 639 F.3d 507 (8th Cir. 2011)

   *Stanback v. Best Diversified Products, Inc.*, 180 F.3d 903 (8th Cir. 1999).

2. *Whether Ms. Brown presented direct evidence or made a prima facie case that her termination was a retaliation against her for filing EEOC complaints.*

   *Jackson v. United Parcel Service, Inc.*, 643 F.3d 1081 (8th Cir. 2011)

   *Thomas v. First Nat. Bank of Wynne*, 111 F.3d 64 (8th Cir. 1997)

   *Russell v. City of Kansas City, Missouri*, 414 F.3d 863 (8th Cir. 2005)

   *Caudill v. Farmland Industries, Inc.,* 919 F.2d 83 (8th Cir. 1990)

3. *Whether Ms. Brown presented direct evidence that her termination violated her rights under the ADA, ADEA, or FMLA, and whether she made a prima facie case for FMLA retaliation.*

   *Quinn v. St. Louis Cnty.*, 653 F.3d 745 (8th Cir. 2011)

---

[1] The Defendants note that their Statement of the Issues varies somewhat from the Plaintiff's. This is due to discrepancies between the Plaintiff's Statement of the Issues and actual argument. The Defendants have stated the issues based upon what they believe the Plaintiff contends in her actual argument.

1

*Stanback v. Best Diversified Products, Inc.*, 180 F.3d 903 (8th Cir. 1999).

*Edmund v. Midamerican Energy Co.,* 299 F.3d 679 (8th Cir. 2002)

*Hannoon v. Fawn Eng'g Corp.,* 324 F.3d 1041 (8th Cir. 2003)

2

## Statement of the Case

On November 10, 2010, Ms. Brown filed a complaint against the City of Jacksonville, Paul Mushrush ("Mr. Mushrush"), and Cheryl Erkel ("Ms. Erkel"), in the United States District Court for the Eastern District of Arkansas, Little Rock Division. **Apx. 1-10**. In her complaint, Ms. Brown alleged that: 1) the Defendants violated her rights under the ADA, ADEA, and Title VII in June of 2009 by terminating her based on her disability, age, and her filing of multiple EEOC charges. *Id.*

On June 14, 2011, Ms. Brown filed an amended complaint alleging the Defendants also violated her rights under the FMLA by terminating her in retaliation for her use of FMLA leave. **Apx. 35-44**. Shortly thereafter, the Defendants filed a motion for summary judgment. **Apx. 57-58**. The district court granted their motion on February 24, 2012. **Apx. 459-474**.

Appellate Case: 12-1730    Page: 11    Date Filed: 07/13/2012 Entry ID: 3931611

## Statement of the Facts

Ms. Brown was hired as a purchasing agent with the City of Jacksonville's Finance Department in 1998. **Apx. 103**. As purchasing agent, Ms. Brown was responsible, *inter alia*, for processing accounts payable items and bid items, promoting sound purchasing procedures throughout all departments of the City, and ensuring compliance with the City's purchasing requirements. **Apx. 211-213**.

Mr. Mushrush was the Director of Finance for the City of Jacksonville and Ms. Brown's supervisor at all relevant times. **Apx. 205**. In 1999, Ms. Brown became Purchasing Manager and had supervisory responsibility over Angela Blacklock. **Apx. 198**. Cheryl Erkel is currently the Finance Director for the City of Jacksonville; prior to that Ms. Erkel was the Assistant Finance Director, and before that Finance Manager then accountant for the City of Jacksonville. *Id.* Ms. Erkel became Assistant Finance Director in December of 2007, and thus became Ms. Brown's supervisor on that date, along with Mr. Mushrush. *Id.*

On May 15, 2007, Ms. Brown filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC")

4

against the City of Jacksonville. **Apx. 104-105.** In her EEOC complaint, Ms. Brown alleged discrimination on the basis of her age, sex, and disability. *Id.*

In November of 2007, Ms. Brown met with Mr. Mushrush and the Director of Human Resources, Jill Ross ("Ms. Ross"), regarding Ms. Brown's work hours. **Apx. 106-108.** At this meeting on November 11, 2007, Mr. Mushrush informed Ms. Brown that she could satisfy her duties in a 40 hour work week; Mr. Mushrush instructed Ms. Brown that she was to observe work hours of 8:00 am to 5:00 pm Monday through Friday, and that she was not allowed in the Department office outside that timeframe without Mr. Mushrush's prior approval. *Id.*

This came in response to Ms. Brown's several year history of complaining to Mr. Mushrush that she was "spending at least 50-60 hours a week in the office," plus an additional "two plus hours [Ms. Brown] spen[t] at home most evenings reviewing, processing, and signing documents." **Apx. 110-111.** According to Mr. Mushrush, "Ms. Brown continually complained that she worked 50 to 60 hours a week…[and] I knew that the job could be done in a 40-hour week, and she was not willing to cooperate or use the resources offered." *Id.*

5

Beyond the issues of the work hours, Mr. Mushrush also identified and addressed problems in purchasing and finance at the meeting in November of 2007. **Apx. 106-108.**

Following this meeting – January 10, 2008 – Mr. Mushrush saw Ms. Brown in the office after 5:00 pm, in violation of his November 2007 mandate that Ms. Brown not remain in the office after 5:00 pm. **Apx. 109.** As a result, Mr. Mushrush issued a written employee counseling form to Ms. Brown. *Id.* In addition to this instance of insubordination, Mr. Mushrush noted that "[s]ince our November 2007 meeting, there have been 3 or 4 times, including Thursday, January 3, 2008, when I was required to remind you of that directive. I have clarified and restated my directions on those occasions and you continually thwart my authority in this matter." *Id.*

Ms. Brown, in response to this discipline, filed a written grievance with Ms. Erkel (who had been promoted to Assistant Finance Director in December of 2007, and was Ms. Brown's supervisor). This grievance regarded what Ms. Brown "believe[d] to be continued unfair, retaliatory treatment by you my direct reporting supervisor and Mr. Mushrush, Director of Finance, City of Jacksonville, Arkansas." **Apx. 115-121.**

6

On January 31, 2008, Ms. Erkel sent Ms. Brown a written response to her grievance denying her allegations. **Apx. 122-123.** In that, Ms. Erkel stated Ms. Brown's allegations of a hostile and retaliatory work environment were attributable to Ms. Brown's own actions. **Apx. 122-123.**

Later, on March 11, 2008, Ms. Erkel sent an e-mail to Ms. Brown regarding concerns Ms. Erkel had about delays the Finance Department experienced in processing accounts payable items – a responsibility of Ms. Brown's. **Apx. 124-125.** Emails of this nature, regarding delays in processing accounts payable items, continued for several months. **Apx. 126-127.** Ms. Brown, during this time, admitted that there had been delays in processing items in accounts payable and that she was having difficulty in performing other duties associated with purchasing. **Apx. 128.**

Following these events, Ms. Brown, in addition to her original EEOC Charge filed in May of 2007, provided the EEOC additional allegations including, *inter alia*, that she was disciplined on January 11, 2008 by Mr. Mushrush and that this written warning constituted retaliation. **Apx. 129.** Yet, on May 8, 2008, the EEOC issued a

7

"Dismissal and Notice of Rights," instructing Ms. Brown to file suit within 90 days of receipt of the notice. **Apx. 130**. And, immediately preceding this notice, the EEOC investigator, in a phone interview with Ms. Brown, informed her that as to her "allegation of harassment, while [she] may consider it harassment, the actions taken by [Mr.] Mushrush are job related activities within the scope of [Mr.] Mushrush's duties as [her] immediate supervisor." **Apx. 129**. Ms. Brown, following receipt of this notice, did not bring suit based on the allegations contained in her May 15, 2007 EEOC charge.

On June 4, 2008, Ms. Erkel sent Ms. Brown an e-mail addressing ways in which Ms. Brown could meet the requirements of her job more efficiently including, but not limited to, suggestions on how to reorganize her filing system and how to communicate more effectively. **Apx. 131-132**. To this end, Ms. Erkel added "It would be great if you could attend a seminar on time management as it has helped me manage my time to be more cost effective." **Apx. 131-132**.

Five days later, Ms. Brown sent an e-mail to Ms. Erkel in response to the above message, stating that she did not believe that she could meet the purchasing requirements in a 40-hour work week. **Apx.**

8

**133-135**.   Ms. Erkel responded to Ms. Brown's concerns the following day; Ms. Erkel's message to Ms. Brown reiterated the importance of time management to meeting purchasing requirements. **Apx. 222-223**. On June 20, 2008, Ms. Erkel provided Ms. Brown with suggestions on how to efficiently organize daily tasks, and on June 27, 2008, Ms. Erkel sent an e-mail to all City employees to notify them of changes in purchasing designed to improve efficiency.  **Apx. 136-140**.

Two months following this, Ms. Brown took extended FMLA leave to recover from surgery on her hip.  Ms. Brown used 449.5 hours, that is, eleven (11) weeks and one (1) day, of FMLA leave between the dates of August 9 and October 18, 2008.  **Apx. 224**.  Ms. Brown received all the time she requested and was not denied any additional leave time by the City of Jacksonville.  *Id.* Following Ms. Brown's return, effective December 29, 2008, the Purchasing Department was merged into and became a part of the Finance Department.  **Apx. 229**.

On April 8, 2009, Ms. Erkel issued Ms. Brown a written employee counseling for "Failure in Performance of Duties" as purchasing manager, for failing to meet deadlines, processing bids, and projects in a timely manner as well as for failing to maintain accurate records.  **Apx.**

**141-142, 229**.  In response, Ms. Brown filed a written grievance stating that the employee counseling was issued in retaliation for the EEOC charge of discrimination that Ms. Brown filed in May of 2007.  **Apx. 143-147** (Grievance letter states the EEOC charge was filed in June, but the facts indicate that the charge, as stated above, was filed in May of 2007).  And, on April 13, 2009, Ms. Brown filed an EEOC complaint with the City of Jacksonville's EEO Officers, Joe Bratton and Peggy Stallings, against the City of Jacksonville, Paul Mushrush and Cheryl Erkel, stating that she had been discriminated against and retaliated against for filing the previous May 2007 EEOC complaint of discrimination. **Apx. 148-162.**

Following their investigation, the City of Jacksonville's EEO Officers sent a letter to Ms. Brown informing her that they had completed the investigation into her complaint and that they had been unable to find evidence supporting her charge of discrimination and retaliation.  **Apx. 163-168.**

On May 21, 2009, following reports that Ms. Brown had been the employee creating a hostile work environment Jill Ross, (Human Resources Director for the City of Jacksonville) began an internal

10

investigation into Ms. Brown's complaint of discrimination and retaliation. **Apx. 169-176.** Ms. Ross' investigation included interviewing the entire Finance Department, including Ms. Brown. *Id.*

Ms. Brown filed an EEOC charge of discrimination under Title VII of the Civil Rights Act against the City of Jacksonville on May 26, 2009 vaguely alleging, *inter alia*, that the investigation into her was an act of discrimination. **Apx. 215-221.** The EEOC dismissed Ms. Brown's charge on August 10, 2010. **Apx. 450.**

On June 8, 2009, Ms. Ross and Ms. Erkel concluded the internal EEOC investigation. **Apx. 169.** Ms. Ross and Ms. Erkel determined that Ms. Brown had created a hostile work environment and had intimidated and bullied two employees of the Finance Department during the investigation, one of which was Ms. Brown's subordinate. *Id.*

Upon receiving this memo, Mr. Mushrush, on June 9, 2009, terminated Ms. Brown for "Failure in Performance of Duties" and "Failure in Personal Conduct." **Apx. 177-180.** The reasons for Ms. Brown's termination included the reports that Ms. Brown had created a hostile work environment and bullied other employees. In addition, Mr.

11

Mushrush noted performance issues concerning Ms. Brown's failure in the bidding process. *Id.*

Appellate Case: 12-1730   Page: 20   Date Filed: 07/13/2012 Entry ID: 3931611

## Summary of the Argument

The district court's ruling should be affirmed in its entirety. First, it was not improper for the district court to consider any and all evidence in the record when making its decision to grant summary judgment. Further, Ms. Brown failed to go beyond her own pleadings to designate specific facts raising a genuine triable issue. Accordingly, all of the district court's actions were just and proper.

Second, although Ms. Brown argues at length that she has presented direct evidence of discrimination and retaliation; she can point to no specific link between any protected activity and her termination. Additionally, Ms. Brown was terminated for legitimate non-discriminatory reasons which she failed to rebut as pretext. Thus, the district court's grant of summary judgment for the Defendants was appropriate on this issue.

Finally, Ms. Brown fails to articulate legitimate claims for ADA, ADEA, or FMLA violations. She, again, can point to no specific link between any discriminatory actions of the Defendants and her termination. Indeed, she fails to establish evidence of any discriminatory actions whatsoever. Furthermore, Ms. Brown was not

Appellate Case: 12-1730   Page: 21   Date Filed: 07/13/2012 Entry ID: 3931611

qualified to perform the essential functions of her job.  And, again, she was terminated for legitimate non-discriminatory reasons which she failed to rebut as pretext. Thus, the district court's grant of summary judgment for the Defendants was appropriate on these issues as well.

Accordingly, for all of the forgoing reasons, the district court's ruling should be affirmed in its entirety.

14

## Argument

As a threshold matter, the issues need be simplified. This need exists because of the breadth of Ms. Brown's original & amended complaints. The Defendants originally attempted to address any potential alleged discriminatory action, but Ms. Brown has limited this to only a claim based on her termination; "The only adverse action [Ms. Brown] is suing over is the termination." **Apx 232**. And, Ms. Brown appears to have dropped her Title VII claim for sex discrimination as there is no mention of it in her appellate brief. Thus, Ms. Brown maintains her claims, all in reference to her termination, for ADA discrimination, ADEA discrimination, retaliation for the filing of EEOC charges, and FMLA Retaliation. These claims fail.

For all the reasons set forth below, Ms. Brown has failed to establish a *prima facie* case of any of her claims. Even if she had established that *prima facie* case, the Defendants had a legitimate non-discriminatory reason for her termination. Thus, the district court correctly granted the Defendants summary judgment, and that order should be affirmed.

15

Standard of Review

The Court will "review de novo the district court's entry of judgment on the pleadings." *Waldron v. Boeing Co.,* 388 F.3d 591, 593 (8th Cir. 2004).  A motion for summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment has the initial burden of informing the court of the basis for its motion and identifying the pleadings, admissions, discovery documents and affidavits it contends show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).  However, the moving party does not have the burden of *negating* the other party's claim. *Id.* at 325.  The movant meets its burden merely by "pointing out" to the district court that there is an "absence of evidence to support the nonmoving party's case." *Id.*  The nonmoving party must then go beyond its own pleadings to designate specific facts raising a genuine triable issue. *Id.* at 324; *See also Counts v. MK-Ferguson Co.,* 862 F.2d 1338, 1339 (8th Cir. 1988). These

16

standards for summary judgment do not change according to the nature of an action. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) ("statements asserting a different standard of review for summary judgment in employment discrimination cases are contrary to Supreme Court precedent.")

To the extent that Ms. Brown tries to argue summary judgment was inappropriate in this case, she fails to point out any specific facts that were disputed and improperly considered. Ms. Brown did not once rebut any of the facts given with regard to her work history and termination. She claims that the testimony of fellow employees and her supervisors should be disregarded, but their testimony, unless disputed, was properly considered with regard to the motion for summary judgment. *Wilcox v. State Farm Mut. Auto. Ins. Co.*, 253 F.3d 1069, 1070-71 (8th Cir. 2001) (where the plaintiff was given a clear opportunity to contradict defendant's affidavit but did not, it would "not be obvious error to include the affidavit's contents in the factual mix relevant to summary judgment."). Because Ms. Brown can point to no facts in dispute that were improperly considered by the district court, summary judgment was appropriate.

17

# I.    The District Court Did Not Incorrectly Grant Summary Judgment based on Un-Raised Issues, and Ms. Brown Failed to Make a Prima Facie Case for ADA or ADEA Discrimination.

Ms. Brown claims that the court below improperly granted summary judgment on her disability discrimination claim and her age discrimination claim, but her arguments fail. She claims that the Defendants did not argue issues on which the district court based its ruling. That assertion is wrong on both a factual and a legal level. Further, even if issues contested were improperly considered, those issues did not stand alone. **Apx. 465-474.** Not only was Ms. Brown failing to meet the legitimate work expectations of her employer, but the district court ruled that even assuming Ms. Brown could set forth *prima facie* cases for age and disability discrimination, she failed to show a genuine dispute that the reasons for her termination were merely pretext for discrimination. *Id.* Therefore, the district court properly granted summary judgment for the Defendants, and that ruling should be upheld.

Appellate Case: 12-1730    Page: 26    Date Filed: 07/13/2012 Entry ID: 3931611

### a. Ms. Brown Was Not a Qualified Individual under the ADA, and, regardless, she fails to Establish a Prima Facie Case for ADA Discrimination

Ms. Brown claims that the court below improperly granted summary judgment on an issue that was not argued, but this is incorrect. The Defendants did argue below that they were entitled to summary judgment on the claim of disability discrimination. As stated above, the movant meets its burden merely by "pointing out" to the district court that there is an "absence of evidence to support the nonmoving party's case." *Id.* And, as the court noted below and Ms. Brown quotes in her brief:

> The Court is *unable to find any evidence* in the record regarding Plaintiff's alleged disability in the eight months that she was employed by the Defendants after her surgery, i.e. whether she was substantially limited in her ability to walk after her surgery. The adverse employment action taken by the Defendants was Plaintiff's termination. There is no evidence regarding Plaintiff's hip or the extent of her limitations at that time. The district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. *Gilbert v. Des Moines Area Community College*, 495 F.3d 906, 915 (8th Cir. 2007) (quoting *White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990)) (emphasis added).

Apx. 470-471.

19

Ms. Brown attempts to argue that the court also erred by failing to find any facts, for her, to support her disability claim. She argues in her brief that there are specific facts in the record establishing a disability, but she fails to support that assertion with any citations to the Appendix. Instead she characterizes the claim as one that she was "regarded as" disabled. This is of no consequence. The standard changes little if the claim is analyzed as such, and the results change not at all.

To establish a *prima facie* claim for ADA discrimination, "[Ms. Brown] must show that '(1) that [she] has a disability within the meaning of the ADA; (2) that [she] is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) that [she] suffered an adverse employment action due to a disability.'" *Tusing v. Des Moines Indpendent Community School District*, 639 F.3d 507, 518 (8th Cir. 2011). If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to come forth with a legitimate, nondiscriminatory reason for the plaintiff's discharge. *Stanback v. Best Diversified Products, Inc.*, 180 F.3d 903, 908 (8th Cir. 1999). If the employer meets that burden of production, then the plaintiff must show

20

that the employer's proffered reason is pretextual and that discrimination 'was the real reason' behind the discharge decision. *Id.*

As to the first element, the ADA provides protection for "qualified individuals with disabilities." *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 720 (8th Cir. 2003) *quoting* 42 U.S.C. §§ 12111(8).  Additionally, an individual who is regarded as having an impairment may qualify under the ADA.  *Shaver*, 350 F.3d at 720 quoting 42 U.S.C. § 12102(2)(B).  In "regarded as" actions, the plaintiff must show that the employer or potential employer "entertain[ed] misperceptions about the individual— it must [have] believe[d] either that one ha[d] a substantially limiting impairment that one [did] not have or that one ha[d] a substantially limiting impairment when, in fact, the impairment [was] not so limiting." *Conant v. City of Hibbing*, 271 F.3d 782, 785 (8th Cir. 2001) *quoting Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489(1999).

So, with this in mind, it was appropriate for the district court to find that Ms. Brown was not a qualified individual under the ADA.  Ms. Brown can only back up her claim with alleged comments from three years prior to her termination, but she disregards the district court's reasoning in doing so.  The district court, as quoted above, looked for

21

evidence of a disability in the eight months *following* Ms. Brown's surgery. *Id.* No evidence of a disability, or a perceived disability during this time period exists in the record. Nor is any such evidence offered by Ms. Brown.

Furthermore, even had Ms. Brown established that she was regarded as disabled; she still failed to show that she was qualified to perform the essential functions of her or that she suffered an adverse employment decision due to her alleged disability. Finally, assuming, *arguendo*, that Ms. Brown had established a *prima facie* case for ADA discrimination, the Defendants have provided evidence that Ms. Brown was terminated for legitimate non-discriminatory reasons, and she has failed to rebut those reasons as pretext. Accordingly, the district court's granting of summary judgment on this issue was appropriate.

### 1. Ms. Brown Was Not Qualified to Perform the Essential Functions of her Job

The undisputed facts illustrate that Ms. Brown was unable to meet the legitimate expectations of the Finance Department, and she can offer no evidence to prove otherwise.

Appellate Case: 12-1730    Page: 30    Date Filed: 07/13/2012 Entry ID: 3931611

"In determining whether or not plaintiff was qualified for her position, we do not simply examine her ability to perform." *Whitley v. Peer Review System*, 221 F.3d 1053, 1055 (8th Cir. 2000), citing *Miller v. Citizens Sec. Group*, 116 F.3d 343, 346 (8th Cir. 1997). Under all three claims, this requires the plaintiff to show that "his work performance met the employer's legitimate job expectations." *Wilking v. County of Ramsey*, 153 F.3d 869 (8th Cir. 1998); *Johnson v. Runyon*, 137 F.3d 1081, 1082 (8th Cir. 1998) (imposing same requirement in ADEA cases).

Here, Ms. Brown, admittedly, was unable to perform her duties within the required hours set by Mr. Mushrush – the hours of 8:00 am to 5:00 pm. Ms. Brown consistently complained to Mr. Mushrush that she had to work between 50 and 70 hours a week "just trying to keep [her] head above water." Mr. Mushrush, however, "knew the job could be done in a 40-hour week." **Supp. Apx. 8,** *Mushrush Depo Vol. I.*, 49:9-11. Mr. Mushrush had the reasonable expectation that Ms. Brown be able to complete her duties between the hours of 8:00 am to 5:00 pm. *Id.*

In response to Ms. Brown's consistent complaints, the City hired an assistant (Charlette). **Apx. 191-192.** In addition, Ms. Erkel offered

23

Ms. Brown suggestions on time management and informed her of time management courses available. **Apx. 131-132**. Finally, Mr. Mushrush ordered Ms. Brown not to stay past 5:00 pm, without authorization, in November of 2007. **Apx. 106-108**.

However, as admitted by Ms. Brown and evidenced by the issues documented in the written warning and termination form, she was still unable to complete the duties of her job between the hours of 8 to 5, and thus was unable to satisfy the legitimate expectations of her employer; in her deposition, Ms. Brown admitted as much. When asked: "if you were to work eight to five, is it fair to say you couldn't do your entire job," Ms. Brown responded "No, I couldn't have." **Apx. 188**. This point is further emphasized by the written warning received indicating that Ms. Brown was late on a bid opening, even though she asserts that bid openings are her number one priority. **Apx. 182-183**. In addition, in Ms. Brown's termination form, Mr. Mushrush noted three other instances in which she was unable to complete her tasks timely. **Apx. 177-180**.

As shown above, Ms. Brown is unable to establish a prima facie case of age discrimination, disability discrimination, or FMLA

24

retaliation because she was unable to perform the legitimate functions of her job.

### 2. Ms. Brown Did Not Suffer an Adverse Employment Action Due to Her Disability.

Ms. Brown has conceded that the only adverse employment action she claims is her termination. And, while Ms. Brown's termination certainly constitutes an adverse action, there was no mention of disability in her termination. Ms. Brown offers no evidence that her termination was linked to any of those factors.

First, when asked to explain why her disability played a role in her termination and how she was treated differently because of her disability, Ms. Brown failed to articulate any connection between her termination or treatment and her alleged disability:

> Q:   Can you tell me why you think your disability played a role in your termination?
>
> A:   Because I did not move as fast as I did before. I had problems with my hips. And he did make comments about me being crip, about me being slow; and, you know, if we were on a different -- if we were -- had that type of relationship, it would have been okay; but we did not have, and I did not appreciate that.

**Apx. 187,** *Brown Depo.*, 49:2-11.

25

Q: But how were you treated differently by the City because of your disability?

A: I think I was treated differently because I was expected to still be able to do the same things that I had done previous.

**Supp. Apx. 2,** *Brown Depo.*, 79:18-24.

As is clear from Ms. Brown's deposition, there is no evidence that her termination was due to her alleged disability. The comments Ms. Brown alleges evidence discrimination above had nothing to do with her termination. Ms. Brown alleges that Mr. Mushrush, sometime between the later months of October 2006 and the first three months of 2007, allegedly commented "[h]ey old woman, we moving slow," allegedly in reference to her hip injury. **Apx. 35-44.** And, on another occasion in the same time frame, he allegedly referred to her injury and age by stating that she was "such an old woman, can't even straighten up" and allegedly greeted her with, "[h]ey, [c]rip." **Apx. 185,** *Brown Depo.*, 43:17.

Even assuming these statements are accurately reflected, the alleged comments occurred over two years prior to Ms. Brown's termination, thus, no specific link between these statements and her termination could be established. Second, the statements contain no mention regarding Ms. Brown's termination, or even potential

26

termination. In fact, Ms. Brown acknowledged that these comments would have been "okay" if her and Mr. Mushrush had "that type of relationship." **Apx. 187,** *Brown Depo.*, 49:7-11. All told, these comments, even if made, do not demonstrate a causal connection. Therefore, the district was correct in granting summary judgment on this claim to the Defendants. That ruling should be upheld.

### 3. Ms. Brown was Terminated for Legitimate Non-Discriminatory Reasons

Even assuming Ms. Brown had established a *prima facie* case of ADA discrimination, the Defendants had a legitimate, non-discriminatory reason for her termination; as such, Ms. Brown's claim fails. If a plaintiff can establish a *prima facie* case, the burden shifts to the employer; the employer must produce a legitimate, non-discriminatory reason for any challenged adverse employment decisions. *Ward v. Int'l Paper Co.,* 509 F.3d 457 (8th Cir. 2007); *see also*, *Chivers v. Wal-Mart Stores, Inc.*, 641 F.3d 927, 934 ("The Court of Appeals does not sit as a super-personnel department reviewing the wisdom or fairness of the business judgments made by employers, *except to the extent that those judgments involve intentional discrimination or unlawful retaliation*.") (emphasis added); *see also*,

27

*Kasper v. Federated Mut. Ins. Co.*, 425 F.3d 496, 504 (8th Cir. 2005) (holding that courts will not second guess the business decisions of employers).

In short, deficient performance and personality conflicts are legitimate, nondiscriminatory reasons for adverse employment actions. *See Hannoon v. Fawn Eng'g Corp.,* 324 F.3d 1041, 1047 (8th Cir. 2003) (finding poor performance as a legitimate, nondiscriminatory basis for an adverse employment action); *Edmund v. Midamerican Energy Co.,* 299 F.3d 679, 685-86 (8th Cir. 2002) ("Employers are free to make employment decisions based upon mistaken evaluations, personal conflicts between employees, or even unsound business practices.").

In the Employee Conference Memo regarding Ms. Brown's June 9, 2009 termination, Mr. Mushrush identifies a myriad of reasons for Ms. Brown's termination. **Apx. 177-180.** First, Mr. Mushrush noted that even following her April 8, 2009 written reprimand, "three more problems have arisen regarding bids and bid openings." *Id.*

In addition to those problems regarding bids and bid openings, Mr. Mushrush acknowledged receiving reports that Ms. Brown "had created a hostile work environment for other Department employees."

28

*Id.* And, when that complaint was investigated and all Finance Department employees were interviewed, it was found that her "actions [had] indeed resulted in a hostile work environment within the Finance Department. *Id.* Such is a violation of Section 35, Failure in Personal Conduct, of the City of Jacksonville's Personnel Policy Manual." *Id.*

The investigation Mr. Mushrush referred to occurred after an investigation into Ms. Brown's claims of hostile work environment were deemed unfounded, yet information uncovered during that first investigation led the City to believe that Ms. Brown had been the employee creating the hostile work environment. **Apx. 169-176.** Following an investigation into whether Ms. Brown had created a hostile work environment for other employees, Mr. Mushrush received a memo documenting the allegations and stating that:

> [a]t the conclusion of the interviews, it was determined that the allegations that June Brown has created a hostile work environment are founded. We have attached an abbreviated transcript of the interviews with each employee for your review.
> . . .
>
> Our determination is based on: the interviews with all Finance Department employees (with the exception of Cheryl Erkel who is an EEO Officer and assisted with this investigation); the statements made by Department employees during the EEO investigation of June Brown's

29

April 9, 2009, complaint; and, EEO definitions of the term
"hostile work environment." It is our position that Ms.
Brown has, through her own actions and inactions, created a
hostile work environment within the Finance Department,
violating of Section 35 of the City of Jacksonville Policy
Manual.

**Apx. 169-170.**

Third, Mr. Mushrush noted "even more disturbing" behavior

discovered during the investigation; Ms. Brown was accused of

harassing and bullying Angela Blacklock "as well as another employee

in Finance by continually asking what the investigation regarded." **Apx.**

**177-180**. Mr. Mushrush continued:

Even after Angela had explained that this was a confidential
investigation and she could not discuss it, you persisted with
her and attempted to coerce information out of her by
making statements like, "I didn't think you were like the
others" and "I would tell you if you were in my position" and
"You are my best friend." As a Supervisor, this is completely
intolerable.

*Id.* Mr. Mushrush's knowledge of these events, again, was conveyed to

him through the memo already mentioned above. In that memo, Ms.

Ross and Ms. Erkel noted that:

In addition, Ms. Brown has acted in a manner so to
intimidate and harass her employee and another
Department employee regarding our investigation, thereby
creating a hostile work environment for her subordinate, a
fellow employee, and others around them. Ms. Brown's

30

repeated attempts to obtain information out of Ms. Blacklock created an additional hostile work environment that continues to be unbearable for Ms. Blacklock.

**Apx. 170.** Mr. Mushrush concluded the termination memo by summarizing the reasons for Ms. Brown's termination:

> You have been repeatedly warned and instructed about timely and accurate performance of your job duties, yet you continue to have difficulties in both areas. . . . And while you've made allegations otherwise, all investigations into complaints of a hostile work environment in Finance all point to you and your actions. It's become such a problem that the efficiency of the Department has been negatively affected to the point that there is no choice but to address the matter now and to resolve the problem permanently. In view of all of the recent problems in your job performance, the continuing nature of the difficulties with the environment in the Finance Department, and your reluctance, even refusal, to accept any responsibility for any of the above, we believe there is no other choice but to terminate your employment with the City of Jacksonville, effective immediately.

**Apx. 178**. Again, deficient performance and personality conflicts are legitimate, nondiscriminatory reasons for adverse employment actions. Here, the written warning and termination were based on just that – deficient performance and personality conflicts. As such, a legitimate non-discriminatory reason for Ms. Brown's June 9, 2009 termination existed, and her claim thus fails.

31

## 4. Ms. Brown Failed to Show Pretext

Once the employer provides a legitimate, non-discriminatory reason for the actions taken, the burden then shifts back to the plaintiff. The plaintiff must then show, by a preponderance of the evidence, that the proffered reason is actually pretext for unlawful discrimination. *Riley v. Lance, Inc.*, 518 F.3d 996, 1000 (8th Cir. 2008). In order to show the reasons provided were pretextual, the plaintiff must show that the employer fabricated them in order to "cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000). The key inquiry is whether the plaintiff can present evidence sufficient to discredit the employer's proffered reason. *Id.*

Here, the stated reasons for the termination were not fabricated to cover-up a discriminatory reason, and Ms. Brown has failed to offer anything to illustrate otherwise. In fact, Ms. Brown, while disagreeing with the issues as stated in the employee counseling forms concerning her written warning and termination, admits she has no reason to prove the reasons were pretextual:

> Q: And while you disagree with whether you were responsible or not, do you have any other reason to believe that [Ms. Erkel] did -- do you have any reason to believe [Ms.

32

Erkel] wrote you up on 4/8/09 for any other reasons besides the ones cited here?

A:    If she had another reason to write me up? No.

**Apx. 193,** *Brown Depo.*, 89:10-15.

Q:    Do you have any reason -- not to dispute the allegations that are in here -- any reason to believe that there's another reason for your termination other than what was listed here?

A:    I think there was an underlying reason.

Q:    And what was that reason?

A:    I think they wanted someone in there that really needed a job; that would do whatever they asked them to do. Because I don't know that they would admit it, but everybody down there is scared of losing their job that doesn't have a spouse or some other form of income and finances.

*Id.,* **Supp. Apx. 3-4,** *Brown Depo.*, 91:22-25, 92:1-7.

As is evidenced by Ms. Brown's responses, when asked pointedly whether another reason existed for her termination, she either admitted she knows of no other reason or articulated a reason that is non-discriminatory.  In both instances, she failed to offer anything to dispute the reasons put forth by Ms. Erkel and Mr. Mushrush for the actions taken.   As such, Ms. Brown failed to establish that the

33

legitimate, non-discriminatory reasons for her termination were pretext to cover-up a discriminatory intent.

Also, Ms. Brown vaguely states that Kathryn Jezwinski and janitors "were also there" when she was caught working past 5 pm. Neither of these individuals is similarly situated for a number of reasons. First, neither was supervised by Mr. Mushrush or Ms. Erkel. Second, even assuming these people were there at the time, there is no allegation that any of those people were told not to be there past 5pm by their supervisors. Thus, Ms. Jezwinski nor the janitors could constitute any evidence of retaliation or discrimination.

As with all Ms. Brown's peripheral claims regarding different treatment she received, the record fully illustrates why each action was taken and no evidence of discriminatory or retaliatory intent exists. In her Response, Ms. Brown offers categories of evidence that she asserts constitute pretext. One of these categories is "shifting explanations." Ms. Brown minimizes the scope of the basis that led to her termination. In short, she was not terminated because she did not do her work fast enough. Rather, Ms. Brown was terminated as a result, *inter alia,* of an extended internal investigation by Ms. Erkel and HR Director Jill Ross,

34

lasting from May 21 until June 8, 2009, indicating Ms. Brown was causing a hostile-work environment for other workers. **Apx. 169-176**.

While Joe Bratton has testified that he did not use the words 'hostile work environment' when speaking with Ms. Ross, he has noted that in his interview with Debbie Jernigan he asked: "So, what I hear you telling me is that because of this defensiveness that [Ms. Brown] exhibits, that you may squelch anything that you might normally say to another coworker because you were -- another coworker in [Ms. Brown's] position -- because you'd be scared of how [Ms. Brown] would react if you said the same thing to her;" and, that Ms. Jernigan stated that this was correct. **Apx. 427.** Mr. Bratton also notes that Angela Blacklock indicated that: "Anything [Ms. Brown] is going through, it affects the whole office, especially me since I work real close with her." **Apx. 408-410.**

Following this, Ms. Ross began an investigation into reports that Ms. Brown was causing problems in the Finance Department. **Apx. 169-176.** Following completion of the investigation, Ms. Ross concluded that Ms. Brown had caused a hostile work environment. **Apx. 169-176.** Mr. Mushrush terminated Ms. Brown based, *inter alia*, on the results of this

35

investigation. **Apx. 177-180**.  Although the reasons for Ms. Brown's termination certainly include her inefficient work performance, Mr. Mushrush has not provided Ms. Brown with a shifting explanation for her termination.   In fact, the given reasons were "Failure in Performance of Duties" and "Failure in Personal Conduct." **Apx. 177-180**.

Ms. Brown also asserts that her closer supervision is pretext for discrimination. As discussed above, this assertion is a mistaken one: Mr. Mushrush and Ms. Erkel, rightfully and reasonably, determined that extra supervision and weekly progress reports were a necessity for Ms. Brown.  As stated by Ms. Erkel:

> What those e-mails were was since she was the manager of the purchasing, it was to show her how efficient and for her to be able to see if there was a certain reason why something was being paid late. Like, for instance, if it was the reason -- she wasn't getting the requisitions in a timely manner, what can we do to get the requisitions quicker; or if it was that we weren't receiving documents, what can we do to get the receiving documents. If it was that we weren't receiving the invoices, then what can we do to get the invoices received quicker.

**Apx. 447-448** (21:25;22:1-9).

36

Further, as for the Mr. Mushrush's disciplining of Ms. Brown for working after 5:00 pm, this, as stated above, was a result of her insubordination.

What remains of Ms. Brown's Response concerning pretext are bare assertions unsupported by evidence. Despite her statement to the contrary, there was evidence to suggest she created a hostile work environment: an entire report's worth conducted by Ross and Erkel. Ms. Brown offers no evidence "that other persons were responsible for [causing a phone bid to be late], and defendants knew it." Finally, Ms. Brown claims that "Erkel was not supposed to be involved in the investigation of Brown's allegations, yet got to sit and watch her subordinates be asked questions about her conduct." But, Ms. Brown fails to note that Ms. Erkel was not part of the investigation into Ms. Brown's claims against Ms. Erkel. Rather, Ms. Erkel only sat in on the interviews of her subordinates concerning the investigation into Ms. Brown for creating a hostile work environment.

Instead of offering any evidence that the Defendants' reasons were pretext for discrimination, Ms. Brown has listed several bare assertions that are erroneous, contradicted, or unsupported by evidence.

37

Therefore, Ms. Brown fails again to make a *prima facie* case for disability discrimination, and, as the district court found, her claim should fail.

### b. The Same Decision-Maker Inference was Properly Applied, and, regardless, Ms. Brown Fails to Establish a Prima Facie Case for ADEA Discrimination.

Ms. Brown, again, claims that the court below improperly granted summary judgment on another issue that was not argued, but she is still incorrect. The Defendants argued below that they were entitled to summary judgment on Ms. Brown's age discrimination claim. **Apx. 167.** It is at the court's discretion how to rule on this issue. A motion for summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that…the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The facts relied upon by the district court in applying the same decision-maker inference, while, possibly, not fully explored in the pleadings, were properly in the record and submitted for the district court's review. **Apx. 468.** Not only was the district court's reliance upon these facts proper, but so was its application of the law.

38

To establish a prima facie case under the AEDA, the Plaintiff must establish that she (1) was at least forty years old, (2) meeting her employer's legitimate performance expectations, (3) suffered an adverse employment action, (4) and that she was replaced by someone substantially younger. *McGinnis v. Union Pacific R.R.*, 496 F.3d 868, 875 (8th Cir. 2007); *Thomas v. Corwin,* 483 F.3d 516, (8th Cir. 2007); *Bearden v. International Paper Company*, 628 F.Supp.2d 914 (E.D. Ark. 1997); *see also O'Connor v. Consolidated Coin Caterers Corporation*, 517 U.S. 308, 313 (1996). As above, if the plaintiff establishes a *prima facie* case, the burden shifts to the employer to come forth with a legitimate, nondiscriminatory reason for the plaintiff's discharge. *McGinnis,* 496 F.3d at 873. If the employer meets that burden of production, then the plaintiff must show that the employer's proffered reason is pretextual and that discrimination 'was the real reason' behind the discharge decision. *Id.*

The district court was not incorrect that an appropriate factor to consider in the case was that "it is unlikely a supervisor would hire an older employee and then discriminate on the basis of age, and such evidence creates a presumption against discrimination." **Apx. 468.**

39

Here, while the record does not specifically reflect that Mr. Mushrush hired Ms. Brown, two things are important to note from the record: 1) Mr. Mushrush was at all relevant times Ms. Brown's supervisor, and 2) the City is a Defendant in this case and accuse, too, of discrimination and retaliation and most certainly hired Ms. Brown. **Apx. 204-205.** For that reason, the District Court's analysis is correct.

Additionally, this was only a small part of the court's justification for granting summary judgment. **Apx. 467-469.** The district court considered several other factors, including that Ms. Brown was not replaced by a younger employee, thus, while Ms. Brown's arguments concerning the long period of time and uncertainty of decision-makers are worth taking into consideration, there is no evidence that the court did not already do so. *Id.* Regardless, the court found it to some extent factually and legally persuasive that Ms. Brown's direct supervisor at all times during her employment was older than her. *Id.* And, not only was she failing to meet the legitimate work expectations of the Defendants, the court also found that Ms. Brown was fired for legitimate non-discriminatory reasons which she failed to rebut as

40

pretext. Therefore, the district court's granting of summary judgment on this issue was appropriate as well.

### 1. Ms. Brown was not meeting her employer's legitimate work expectations

For all of the same reasons that Ms. Brown was not qualified to perform the essential functions of her job, she also was not meeting the Defendants' legitimate work expectations.

### 2. Ms. Brown Was Not Replaced By Someone Younger

Ms. Brown hired, supervised at all times, and terminated by an older employer, and she was not replaced by a younger employee. In fact, Ms. Brown was not replaced at all. These factors weigh heavily against the establishment of a prima facie case for age discrimination.

### 3. Ms. Brown was Terminated for Legitimate Non-Discriminatory Reasons which She Failed to Rebut as Pretext

For all of the reasons already established, not only was Ms. Brown terminated for legitimate non-discriminatory reasons, but she failed to rebut those reasons as pretext. Accordingly, the district court was correct in granting summary judgment for the Defendants, and its ruling should be upheld.

Appellate Case: 12-1730    Page: 49    Date Filed: 07/13/2012 Entry ID: 3931611

## II.    The District Court Properly Granted Summary Judgment on Ms. Brown's Retaliation Claim

Ms. Brown argues that the district court erred in granting summary judgment to the Defendants, because she presented direct evidence of retaliation, as well as additional evidence that could be used to infer retaliation. This is false. To survive summary judgment, Ms. Brown must either present direct evidence of retaliation, or establish a *prima facie* case of retaliation. To establish a *prima facie* case Ms. Brown must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. *Jackson v. United Parcel Service, Inc.,* 643 F.3d 1081, 1088 (8th Cir. 2011). Again, if the plaintiff establishes a *prima facie* case, the burden shifts to the employer to come forth with a legitimate, nondiscriminatory reason for the plaintiff's discharge. *Stanback v. Best Diversified Products, Inc.,* 180 F.3d 903, 908 (8th Cir. 1999). If the employer meets that burden of production, then the plaintiff must show that the employer's proffered reason is pretextual and that discrimination 'was the real reason' behind the discharge decision. *Id.*

42

Not only did Ms. Brown fail to present direct evidence of retaliation, but she failed to present any evidence from which a causal connection could be inferred. The Defendants concede that Ms. Brown both engaged in protected activity and suffered an adverse employment action, however, *she has failed to show a causal connection between the two.* Ms. Brown appears to confuse direct evidence, causal connections, and pretext. She cites several pretext cases to support her direct evidence claims, and in her brief she seems to indicate that she is not required to rebut the legitimate non-discriminatory reasons for her termination as pretext. This is further confused when she later argues that she proved pretext anyway. As stated above and below, Ms Brown must either present direct evidence *or* establish a prima facie case. *Jackson*, 643 F.3d at 1088.

These two methods of surviving summary judgment have very different standards. *Id.* First, direct evidence "is evidence showing a *specific link* between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the decision. *Thomas v. First Nat. Bank of Wynne*, 111 F.3d 64, 66 (8th Cir. 1997)

43

(emphasis added).  Ms. Brown cites this very proposition in her own brief.  She does not once, however, attempt to demonstrate a specific link between any alleged conduct and her termination. Instead, she attempts, and fails, to show a causal connection of the *prima facie* between conduct of the Defendants and her termination, which is an admittedly lower standard.  And, even if she were to meet that lower standard, she seemingly makes no attempt to prove that the legitimate non-discriminatory reasons for her termination were pretext.

Pretext is shown presenting evidence that the employer fabricated the legitimate non-discriminatory reasons in order to "cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000).  Ms. Brown makes no such arguments.

Therefore, even had Ms. Brown made a *prima facie* case for retaliation either through offering direct evidence or establishing the elements of a *prima facie* case absent direct evidence, the Defendants have presented legitimate non-discriminatory reasons for her termination, she failed to show a genuine dispute that the reasons for her termination were merely pretext for discrimination.  Accordingly, the district court's grant of summary judgment should be affirmed.

44

### a. Ms. Brown Did Not Show Evidence of a Causal Connection, Direct or Otherwise

Ms. Brown goes to great lengths to try to lessen the burden for presenting direct evidence. This, oddly enough, demonstrates the weakness of her case. As stated above, direct evidence "is evidence showing a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the decision. *Thomas v. First Nat. Bank of Wynne*, 111 F.3d 64, 66 (8th Cir. 1997) (emphasis added). Ms. Brown fails to show this specific link.

Ms. Brown claims that *Desert Palace, Inc. v. Costa* has somehow modified the burden she must meet to show direct evidence of retaliation. Not only is this untrue, the case Ms. Brown cites as being most apposite on the issue explicitly denies that *Desert Palace* affected this Court's precedent. *Russell v. City of Kansas City, Missouri*, 414 F.3d 863, 866 (8th Cir. 2005) ("As an initial matter, we agree with Russell that the district court committed an error of law in construing the Supreme Court's decision in *Desert Palace*...as modifying the summary judgment standard applied by this court in employment

45

discrimination cases."). Furthermore, the facts in *Russell* are most certainly *not apposite*.

In *Russell*, the plaintiff was demoted for allegedly making racist comments, but those she was accused of making the comments to not only denied they were made, but testified that they felt the plaintiff herself was the one being discriminated against. *Id*. at 867. The court held, as Ms. Brown points out in her own brief, that:

> When two co-workers who are the alleged victims of misconduct deny that misconduct occurred and assert that the plaintiff is herself the victim of discrimination by the employer, that may well be direct evidence of discrimination sufficient to withstand the employer's motion for summary judgment. And if this testimony is not by itself sufficient, it is a powerful showing of the pretext needed to defeat summary judgment under McDonnell Douglas.

*Id*. at 867.

There are *no similarities* between this fact pattern and the case at hand. Ms. Brown has brought an action for retaliation, not discrimination. She alleges that she was retaliated against for filing EEOC charges against her employer, but she has presented no evidence to support this claim. Further, while one impetus for her termination was the creation of a hostile work environment, unlike the facts in *Russell*, not a single employee has come to her defense. Additionally,

46

Ms. Brown could point to no justification for her retaliation claim in her own deposition.

"Well, it just seemed odd that, you know, I filed an EEO on the 25th [sic] and I was terminated in June." **Supp. Apx. 5-6** *Brown Depo.*, 107:20-21, 108:9-10, (Q. So it's the timing of everything; is that right? A. Oh, yeah.). This is the extent of Ms. Brown's evidence regarding the causal connect between her termination and her protected activity. Speculation is insufficient to establish a causal connection. *Caudill v. Farmland Industries, Inc.,* 919 F.2d 83, 86–87 (8th Cir. 1990) (close temporal proximity between filing of age discrimination charges and firing of plaintiff was only a "slender reed of evidence" for which "rank speculation" would be required to assume causal connection between the two events, in light of other evidence presented); *see also Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 501 (3d Cir.1991), *cert. denied,* 502 U.S. 940 (1991) ("inference based on timing alone" was insufficient in light of other evidence presented). Lastly, to the extent that Ms. Brown claims Ms. Erkel *repeatedly* accused her of being insubordinate in filing EEOC claims, this is not contained in the record. Rather, Ms. Brown references only one instance of this type of comment, not "repeated"

47

instances. And, the Defendants presume Ms. Brown is alluding to a memo written by Ms. Erkel to Ms. Brown.

This memo fails to rise to the level of direct evidence. Again, it is assumed that Ms. Brown is referring to Ms. Erkel's April 17, 2009 letter to Ms. Brown in response to her April 9, 2009 grievance. **Apx. 407**. Upon review, it is clear that Ms. Brown's recount of Ms. Erkel's statement is, at the very least, incomplete. Ms. Erkel's "insubordination" comments concerned Ms. Brown's constant accusations of retaliation in response to criticism, and not a more generalized statement that complaints amount to insubordination. *Id.* This can be clearly seen in the following April 17, 2009 correspondence:

> I am responsible for directing and encouraging the members of our office to work to their fullest potential. I acknowledge when a job has been performed well. I also acknowledge when improvements need to be made. I constantly try to make improvements in our office to ensure efficient and quality work in a timely manner through comprehensive teamwork and communication. On every occasion that I have communicated my suggestions for improvements that would increase the efficiency of our department, you have responded with accusations of retaliation and personal attacks. These accusations are questioning my code of ethics and managerial style, which is disrespectful to me and my position of authority. *Disrespect of one's supervisor is insubordination.*

Appellate Case: 12-1730    Page: 56    Date Filed: 07/13/2012 Entry ID: 3931611

This disrespect is causing a non-cohesive and non-congenial working relationship between you and me, a subordinate and a supervisor. This type of response leads me to believe that you do not want to be given suggestions for improvements in order to perform your duties more efficiently.

*Id.* (emphasis added)

Even if Ms. Brown's account of this statement could be portrayed as Ms. Erkel stating "that filing complaints of discrimination was insubordinate," it does not constitute direct evidence as the statement has no link to Ms. Brown's termination. Further, it must be noted that this statement came after Ms. Brown's most recent allegation that Ms. Erkel had retaliated against Ms. Brown *for filing an EEOC complaint two-years prior against Mr. Mushrush. Id.* For those reasons, this statement, even if properly recounted by Ms. Brown, does not constitute direct evidence of discrimination. Additionally, this statement is not direct evidence of age discrimination, disability discrimination, or retaliation for taking FMLA leave; thus, it adds nothing to assist Ms. Brown in her burden for those claims.

Ms. Brown also makes the vague statement that Ms. Erkel "admitted that absent the complaints [Ms.] Brown had made in April 2009, she would not have been investigated." The undisputed facts

49

establish that the investigation into Ms. Brown came about as a result of the findings of the investigation into Ms. Brown's accusations against Ms. Erkel. **Apx. 169-176.** Thus, to an extent, this statement is accurate. However, it adds nothing to the issue of direct evidence or to any other issue in this case.

Furthermore, the actions of Ms. Erkel are not automatically imputable to Mr. Mushrush who conducted an independent review of Ms. Brown's performance in deciding to terminate her. *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1192 (2011) (Even if the decision to terminate were based, unbeknownst by the decision maker, on a report by another employee with discriminatory or retaliatory intent, it would be a considerable stretch to call it "a motivating factor"). Ultimately, one of the two reasons for Ms. Brown's termination was her "failure in performance of duties," documentation of which dates back to several months before Ms. Erkel became Ms. Brown's supervisor. Additionally, it was not Ms. Erkel's report that led to Ms. Brown's termination; rather it was a litany of performance issues and the reports by fellow employees of Ms. Brown's behavior that led to her termination.

50

In summation, Ms. Brown's strenuous attempts to characterize her evidence as direct evidence so that it applies to her case fails. *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1088 (8th Cir. 2011) cert. denied, 132 S. Ct. 1075 (U.S. 2012) ("A party's "unsupported self-serving allegation[ ]" that her employer's decision was based on retaliation does not establish a genuine issue of material fact."). Therefore, the district court's ruling should be affirmed.

### b. Ms. Brown was Terminated for Legitimate, Non-Discriminatory Reasons, and she failed to rebut those reasons as pretext.

Even assuming Ms. Brown had show the causal connection necessary to establish a *prima facie* case of retaliation, the Defendants have presented legitimate non discriminatory reasons for her termination, and Ms. Brown has failed to rebut those reasons as pretext. Accordingly, the district court's grant of summary judgment for the Defendants was appropriate and should be upheld.

### III. Ms. Brown Presented No Direct Evidence of Her Discrimination Claims and the District Court Properly Granted Summary Judgment on Ms. Brown's remaining FMLA Retaliation Claim.

Ms. Brown claims that she was discriminated against because of age and disability and that she was retaliated against for her use of

Appellate Case: 12-1730    Page: 59    Date Filed: 07/13/2012 Entry ID: 3931611

FMLA leave, yet she fails to present direct evidence or establish a *prima facie* case on any of these claims.

In analyzing discriminatory discharge cases brought under the ADA and ADEA and Retaliation cases brought under the FMLA, unless the Plaintiff can come forward with direct evidence of discrimination, the courts apply the burden-shifting framework set forth in *McDonnell Douglas. Stanback v. Best Diversified Products, Inc.*, 180 F.3d 903, 908 (8th Cir. 1999). As shown above, Ms. Brown fails to establish a *prima facie* case of ADA or ADEA discrimination, but her FMLA Retaliation claim has not yet been addressed.

To establish a prima facie case of retaliation under the FMLA, the Plaintiff must show that: (1) she availed herself of a protected FMLA right, (2) she was adversely affected by an employment decision, and (3) there is a causal connection between the two actions. *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 753 (8th Cir. 2011). If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to come forth with a legitimate, nondiscriminatory reason for the plaintiff's discharge. *Stanback v. Best Diversified Products, Inc.*, 180 F.3d 903, 908 (8th Cir. 1999). If the employer meets that burden of production, then the

Appellate Case: 12-1730     Page: 60     Date Filed: 07/13/2012 Entry ID: 3931611

plaintiff must show that the employer's proffered reason is pretextual and that discrimination 'was the real reason' behind the discharge decision. *Id.*

Ms. Brown has not presented direct evidence of any of these claims. As with her retaliation claim, she fails in her attempt to misconstrue the direct evidence standard. Therefore, her ADA and ADEA claims, having not been saved through direct evidence or a prima facie case, fail entirely. As to her FMLA Retaliation claim, Ms. Brown again fails to show a causal connection, and she again fails to establish that the Defendants' legitimate non-discriminatory reasons for her termination were pretextual. Thus, the district court's grant of Summary Judgment for the Defendants on these claims should be upheld.

### a. Ms. Brown Presented No Direct Evidence

Again, Ms. Brown goes to great lengths to try to lessen the burden for presenting direct evidence, but it is is to no avail. Direct evidence, as stated above, "is evidence showing a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion

53

actually motivated" the decision. *Thomas v. First Nat. Bank of Wynne*, 111 F.3d 64, 66 (8th Cir. 1997) (emphasis added). Ms. Brown cites this very proposition in her own brief. And, despite her extensive analysis of case law, she fails at any point to show a specific link between her termination and either the alleged comments from 2 to 3 years ago or her termination.

Ms. Brown alleges that Mr. Mushrush, sometime between the later months of October 2006 and the first three months of 2007, allegedly commented "[h]ey old woman, we moving slow," allegedly in reference to her hip injury. **Apx. 35-44**. And, on another occasion, he allegedly referred to her injury and age by stating that she was "such an old woman, can't even straighten up." He also allegedly greeted her with, "[h]ey, [c]rip." *Id*.

Again, even assuming these statements are accurately reflected, these statements do not amount to direct evidence. First, the alleged comments occurred over two years prior to Ms. Brown's termination, thus, no specific link between these statements and her termination could be established. Ms. Brown contends that in *Hardin v. Hussmann Corp.* the court found a causal connection between an adverse

54

employment action and comments made eight years prior. *Hardin v. Hussmann Corp.*, 45 F.3d 262, 266 (8th Cir. 1995) *abrogated by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) Not only has *Hardin* been abrogated because the Court mistakenly held that summary judgment was disfavored in employment cases, but Ms. Brown fails to acknowledge that the court stated specifically that the "statement taken alone is not so troubling." *Id*. The Court in *Hardin* was persuaded by multiple factors, some of which were much more recent. *Id*.

Second, the statements contain no mention regarding Ms. Brown's termination, or even potential termination. In fact, Ms. Brown acknowledged that these comments would have been "okay" if her and Mr. Mushrush had "that type of relationship." **Apx. 187**. All told, these comments, even if made, do not amount to direct evidence of discrimination. Therefore, the district court was correct in finding no direct evidence of disability discrimination, age discrimination, or FMLA retaliation, applying the *McDonnell Douglas* analysis, and ultimately granting summary judgment on these claims to the Defendants. That ruling should be upheld.

55

### b. Ms. Brown Fails to Establish a Prima Facie Case for FMLA Retaliation

#### 1. Ms. Brown Did Not Suffer an Adverse Employment Action as a Result of Her Use of FMLA leave

Ms. Brown has conceded that the only adverse employment action she claims is her termination. And, while Ms. Brown's termination certainly constitutes an adverse action, there was no mention of FMLA leave in her termination. And, Ms. Brown offers no evidence that her termination was linked to her FMLA leave.

The Defendants do not dispute that Ms. Brown took twelve weeks of FMLA leave between August 2008 and October 2008 because of hip problems. They do dispute, however, Ms. Brown's contention that the Defendants "conduct" from the time of her leave until her termination was due to her FMLA leave. (Complaint, ECF No. 21, p. 8). It is well notes that "[c]onfusion often arises as to whether an employee's FMLA claim 'is really about interference with his substantive rights, not discrimination or retaliation. The difference between the two claims is that the interference claim merely requires proof that the employer denied the employee [her] entitlements under the FMLA, while the retaliation claim requires proof of retaliatory intent.' " *Stallings v.*

56

*Hussmann Corp.,* 447 F.3d 1041, 1051 (8th Cir. 2006) (*quoting Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005)).

Based on her testimony, Ms. Brown is not alleging she was terminated because of her FMLA leave, rather the she alleges that, as a result of her FMLA leave, her files were moved and she was held accountable and then "expected to come back in and be able to do my job." **Apx. 190**. When asked why she believed her termination was connected with her FMLA leave, Ms. Brown, instead of offering any evidence that her termination amounted to retaliation, merely stated: "Well, because I feel like my files would not have been moved and me be held accountable in my absence and then be expected to come back in and be able to do my job." *Id.* Not only does this testimony fail to offer any evidence of a causal connection, but it also appears to negate any inference that an adverse action occurred.

While Ms. Brown attempts to characterize the moving of her files as some adverse action amounting to retaliation, she acknowledges that "when [she] returned from 12 weeks of Family Medical Leave absence [Ms. Erkel] came to my office and informed [Ms. Brown] that [she] had [Ms. Brown's] files moved." **Apx. 145**. Further, Ms. Brown

57

acknowledges that Ms. Erkel "escorted [Ms. Brown] to the file room [and] showed [Ms. Brown] the files and explained that [Ms. Erkel] had separated the project and other files." *Id.* A supervisor moving files, explaining to an employee where the files had been moved, and explaining the manner in which the files were now arranged neither amounts to an adverse employment action nor establishes any causal connection.

Moreover, Ms. Brown cannot establish a causal connection between the moving of her files and her FMLA leave. In fact, Ms. Brown testified that the reason given for moving her files was because "no one understood [her] filing system." **Apx. 190**. According to Ms. Erkel, it was "time consuming trying to locate paperwork" in Ms. Brown's files. **Apx. 200**. Further, Ms. Erkel "counseled [Ms. Brown] on reorganizing her files at the beginning of '08, and she never reorganized them." *Id.* Ms. Erkel's letter to Ms. Brown in June of 2008, further illustrates concerns that Ms. Erkel had with the manner in which Ms. Brown maintained her files:

> I have noticed that you have several different files for processing paperwork. There is a file in Angela's office that has two files for each department. You have files in your office for each department. This requires you to look in three

58

> different files for a piece of paper providing that you know which department is involved. I would like to suggest you change your filing system so that you can find something by looking in two places even if you do not know the department. This could be accomplished by having files for A-Z in Angela's office and in your office.

**Apx. 131-132**. Based on this, there is no evidence of a causal connection between Ms. Brown's FMLA leave and Ms. Erkel moving the files.

Further, though Ms. Brown is claiming that by moving the files a chain of events began resulting – eight (8) months later – in her termination, Ms. Brown fails to establish that any of the events occurred as a result of her taking FMLA leave. Admittedly, Ms. Erkel issued a written warning to Ms. Brown for, in part, not maintaining accurate records. In the written warning, Ms. Erkel explained:

> I discovered that the paperwork was not in our files, the total of the payments did not match the contract total and there were missing purchase orders. As Purchasing Manager, it is your responsibility to maintain accurate records.

**Apx. 141-142**. If Ms. Brown is claiming that the "missing purchase order" came about because of the files being moved and thus her written warning and ultimate termination occurred because of the missing files, she fails to recognize that Ms. Erkel based the April 8, 2009 written warning on other factors besides "missing purchase orders." For

59

instance, as indicated by the quote above, Ms. Erkel discovered that "the total of the payments did not match the contract total." *Id.* In addition, Ms. Erkel noted:

> It is your responsibility to set the time for bid openings, review the specifications for the items being purchased, advertise for bids, attend the bid opening, and produce the bid tabulation sheets. An advertisement ran in the newspaper on 4/5/09 for roof repair for CDBG. The documentation that the bidders receive should be available the next business day after the advertisement. You still did not have the documentation ready as of the close of business on 4/7/09. This has substantially reduced the amount of time the vendors have to prepare before the scheduled bid opening.

Id. As indicated above, Ms. Erkel did not base the April 8, 2009 written warning solely on "missing purchase orders," rather the "missing purchase orders" were only one part of the explanation for the written warning.

With that in mind, if Ms. Brown is further attempting to continue the link between the missing documents and her termination fails, as the stated reasons for her termination have nothing to do with the missing documents. Instead, Ms. Brown was terminated for a myriad of reasons and the only reference to the April 8, 2009 written warning

60

concerned her failures regarding bids and bid openings, not the missing documents:

> On April 8, 2009, you had to be reminded of your responsibilities regarding bids and bid openings again. This was a result of several problems in meeting all of the deadlines, having information available, and processing bids and projects timely, all of which is your responsibility to organize prior to publication of bid requests. Since then, three more problems have arisen regarding bids and bid openings.

**Apx. 177-178**. Thus, even assuming Ms. Brown is attempting to connect the moving of her files during her FMLA leave to her termination, the causal connection fails.

Further, the sheer length of time between her FMLA leave and her termination negates any causal connection. "[T]he time lapse between an employee's protected activity and the employer's adverse action is an important factor when evaluating whether a causal connection has been established. *McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1003 (8th Cir. 2005)(the court considered a six month interval between the employee's return from FMLA leave and his transfer in holding that the evidence was insufficient to establish a causal link). In *Kipp v. Missouri Highway and Transportation Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002), the court found that a two month

61

interval between an assertion of rights under the FMLA and termination so diluted any inference of causation that, as a matter of law, the court could find no causal link.

Here, Ms. Brown's FMLA leave ended in October of 2008 and her termination occurred eight (8) months later in June of 2009; such a lengthy interval between the her FMLA leave and termination, negate any causal connection between the two. And, Ms. Brown for this reason, and those listed above, fails to establish a *prima facie* case of retaliation.

Therefore, Ms. Brown is unable to establish a *prima facie* case of disability discrimination, age discrimination, or FMLA retaliation, and the Defendants were entitled to summary judgment.

### 2. Ms. Brown Was Terminated for Legitimate, Non-Discriminatory Reasons & Failed to Show Pretext

For all of the same reasons stated in response to the retaliation claim, not only was Ms. Brown terminated for legitimate, non-discriminatory reasons, but she failed to rebut those reasons as being mere pretext for discrimination or retaliation. Accordingly, the district court's ruling should be affirmed in its entirety.

Appellate Case: 12-1730   Page: 70   Date Filed: 07/13/2012 Entry ID: 3931611

## OTHER INSTANCES OF DISCRIMINATION

Ms. Brown, at the end of her brief, vaguely mentions "other instances" of discrimination. While it is unclear precisely where Ms. Brown intends this to fit into her arguments, these alleged instances of discrimination have no bearing on this case as Mr. Mushrush nor Ms. Erkel had any role in the alleged instances of discrimination.

First, while it is admitted Kathryn Jezwinski brought suit against the City of Jacksonville for a USERRA violation and a jury verdict was returned in her favor, this has no impact on the present case. Ms. Brown is not bringing suit for a USERRA violation, and neither Mr. Mushrush nor Ms. Erkel was involved in Ms. Jezwinski's termination. As to Ms. Ross' alleged involvement, Ms. Brown offers nothing but a bare statement that "Jill Ross was involved in that termination and took actions that led directly to it." This is wholly insufficient. Ms. Jezwinski made no allegation that Ms. Ross discriminated against her; Ms. Jezwinski's allegations were solely leveled against her supervisor, Susan Davitt.

63

Ms. Brown also vaguely references Donna Majeske as an example of discrimination. However, the only support Ms. Brown offers is an EEOC charge filed by Ms. Majeske. This, too, is wholly insufficient. Ms. Brown offers nothing, besides the bare allegation in this complaint that discrimination had occurred. Even if this is enough to illustrate an instance of discrimination, Ms. Majeske's allegation was made against the police department; Mr. Mushrush and Ms. Erkel had nothing to do with Ms. Majeske's termination.

Finally, Ms. brown offers the affidavit of Gene Douglas and his allegation of discrimination. Again, this is nothing more than a bare allegation. There has been no finding that any discriminatory acts have occurred. Further, Mr. Douglas asserts that Ms. Ross is "responsible for his termination;" yet, Mr. Douglas makes no allegations that Mr. Mushrush or Ms. Erkel was involved in his termination. Thus, as this is a mere allegation by Mr. Douglas, no evidence has been provided to support his claims. And, because Mr. Mushrush and Ms. Erkel were not involved, Ms. Brown's reliance on this to establish some intent on the part of Mr. Mushrush or Ms. Erkel is misplaced.

64

In conclusion, Ms. Brown's "other instances of discrimination" are either unsubstantiated allegations or have no relation to her claims. Further, none of the claims involve any allegations against Mr. Mushrush or Ms. Erkel, thus none of the allegations are relevant to Ms. Brown's ultimate burden to show "a genuine issue for trial about whether the employer acted based on an intent to discriminate rather than on a good-faith belief that the employee committed misconduct justifying termination." *Wierman v. Casey's Gen. Stores,* 638 F.3d 984, 995 (8th Cir. 2011). Ms. Brown offers no evidence that Mr. Mushrush or Ms. Erkel had intent to discriminate. Thus, Ms. Brown's claims fail.

Appellate Case: 12-1730    Page: 73    Date Filed: 07/13/2012 Entry ID: 3931611

<u>Conclusion</u>

Mr. Brown was not meeting the legitimate work expectations of the City of Jacksonville, and she created a hostile work environment for all of her fellow employees. At no point during Mr. Brown's tenure were her FMLA, ADA, ADEA, or rights violated. Nor was Ms. Brown at any point retaliated against for asserting her rights. In fact, despite Mr. Brown's poor work product, extraordinary efforts were taken to protect her rights, and give her a chance to improve her performance so as to meet the work expectations of the City of Jacksonville. Ms. Brown's claims and suit are without merit. The district court was correct in granting summary judgment for the Defendants. This court should affirm.

Respectfully submitted,

THE CITY OF JACKSONVILLE,
ARKANSAS, PAUL MUSHRUSH and
CHERYL ERKEL, Appellees

By:    /s/ John L. Wilkerson, ABA #2008046
Attorney at Law
PO Box 38
North Little Rock, AR  72115
Tel: 501-978-6136
Fax:  501-537-7268
<u>jwilkerson@arml.org</u>

66

## Certificate of Compliance

I, John Wilkerson, hereby certify that the above and foregoing brief was prepared using Microsoft Word 2000 or more recent version, and that it complies with the type-volume limitation under Fed.R.Civ.P. 32 (a)(7)(B). According to the word count option in the program, this brief contains 12,811 words.

## Certificate of Service and Virus Scan

Pursuant to 8th Cir.R.28A(h)(2), I hereby certify that the foregoing brief was scanned for viruses and is virus-free.

I further certify that a true and correct copy of the foregoing brief has been served upon the following parties of record via CM/ECF on this July 12, 2012, and submitted to the Court for review:

Lucien Gillham
Harrill & Sutter, P.L.L.C.           Robert Bamburg
Attorneys at Law                     303 N. James
PO Box 2012                          PO Box 5913
Benton, AR 72018                     Jacksonville, AR 72076
lucien.gillham@sbcglobal.net

/s/ John L. Wilkerson, ABA #2008046

67